NOYD *v.* BOND ET AL.

No. 830.  Argued April 24, 1969.—Decided June 16, 1969.

*Marvin M. Karpatkin* argued the cause for petitioner. With him on the brief were *Melvin L. Wulf, William F. Reynard, Alan H. Levine, Rhoda H. Karpatkin,* and *Michael N. Pollet.*

*James VanR. Springer* argued the cause for respondents. On the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Joseph J. Connolly, Beatrice Rosenberg,* and *Roger A. Pauley.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

Petitioner is a career officer in the Air Force who has come to believe that this country's participation in the Vietnamese conflict is unjust and immoral. Having decided that he would do nothing to further the Nation's military effort in Southeast Asia, Captain Noyd refused to obey an order, issued December 5, 1967, requiring him

to teach one of the junior officers at the Cannon Air Force Base, New Mexico, to fly a military airplane.[1]

In response, Major General Charles Bond, Jr., the Commander of the Twelfth Air Force, convened a general court-martial at the Cannon Base. On March 8, 1968, the court-martial found Noyd guilty of wilfully disobeying a lawful order; on the following day petitioner was sentenced to one year's confinement at hard labor, forfeiture of all pay and allowances, and dismissal from the Air Force. As soon as the court-martial announced its sentence, Captain Noyd was ordered confined to his quarters. The court-martial's judgment was then forwarded to General Bond for the review required by 10 U. S. C. § 864, and on May 10, 1968, the General approved the sentence, ordering that: "Pending completion of appellate review, the accused will be confined in the United States Disciplinary Barracks, Fort Leavenworth, Kansas."

---

[1] Before this incident took place, Captain Noyd sought to invoke the jurisdiction of the civilian federal courts in an effort to require the Air Force either to assign him to duties consistent with his beliefs or to dismiss him. The United States District Court for the District of Colorado denied relief because petitioner had not yet been court-martialed for refusing to obey orders and so had not fully exhausted his remedies within the military system. *Noyd* v. *McNamara*, 267 F. Supp. 701 (1967). The Court of Appeals for the Tenth Circuit affirmed, 378 F. 2d 538, and this Court denied certiorari, 389 U. S. 1022 (1967). The Courts of Appeals for the Second and Fifth Circuits have, however, subsequently decided that the exhaustion doctrine did not necessarily require a serviceman to await the military's decision to convene a court-martial before seeking relief in the civilian courts. *Hammond* v. *Lenfest*, 398 F. 2d 705 (C. A. 2d Cir. 1968); *In re Kelly*, 401 F. 2d 211 (C. A. 5th Cir. 1968). Cf. *Brown* v. *McNamara*, 387 F. 2d 150 (C. A. 3d Cir. 1967). We have not found it necessary to resolve this conflict among the circuits in order to decide the narrow issue in this case.

At this point, petitioner's attorneys undertook two courses of action. On the one hand, they appealed the merits of petitioner's conviction to the Air Force Board of Review, which is the appellate military tribunal Congress has established to oversee the administration of criminal justice in petitioner's branch of the Armed Forces. On the other hand, they sought habeas corpus relief from the civilian courts, arguing that the Uniform Code of Military Justice required that petitioner be released from confinement pending the outcome of his military appeal.

At the present time, petitioner's appeal from his conviction is still pending in the higher reaches of the military court system. While the Air Force Board of Review has now affirmed the judgment of the court-martial, the Court of Military Appeals, the highest military tribunal, has agreed to review Captain Noyd's case. Petitioner does not suggest that we may properly interfere with the orderly process of military review by considering the merits of his conviction at this juncture. Rather, we are now only asked to vindicate his asserted right to remain free from confinement while the validity of his conviction is still being litigated in the appellate military courts.

I.

Captain Noyd's effort to invoke the assistance of the civilian courts was precipitated by General Bond's order transferring petitioner to the disciplinary barracks at Fort Leavenworth. Shortly after the order was issued, and before it was carried out, petitioner sought a writ of habeas corpus from the United States District Court for the District of New Mexico, arguing that both his confinement at the Cannon Air Force Base and his proposed transfer to Fort Leavenworth were in violation of two provisions of the Uniform Code of Military Justice.

First, petitioner contended that his confinement constituted an attempt to "execute" his sentence in violation of Article 71 (c) of the Code, which provides:

"No sentence which includes, unsuspended, a dishonorable or bad-conduct discharge, or confinement for one year or more, may be *executed* until affirmed by a board of review and, in cases reviewed by it, the Court of Military Appeals." 10 U. S. C. § 871 (c). (Emphasis supplied.)

Second, petitioner argued that Article 13 of the Code [2] only authorized confinement of a convicted serviceman pending his appeal after the military has found that restraint is necessary to prevent the serviceman's flight from the jurisdiction. Since no such finding has been made in this case, petitioner argued that the civilian court should require his complete release.

The Government, in addition to opposing Captain Noyd's claims on the merits, argued that petitioner should be required to exhaust his military remedies before seeking habeas corpus relief from the civilian courts. The District Court, however, refused to apply the exhaustion principle in the present case, finding that the military court system did not provide petitioner with an adequate remedy by which he could test the validity of his confinement, pending appeal, in an expedited man-

---

[2] This provision of the Code reads:

"Art. 13. Punishment prohibited before trial.

"Subject to section 857 of this title [Article 57 of the Code], no person, while being held for trial or the result of trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline." 10 U. S. C. § 813.

ner.  Turning to the merits, the District Judge granted petitioner part of the relief he requested.  While the court refused to review the legality of Noyd's confinement at the Cannon Air Force Base, the court did find that petitioner's incarceration at Fort Leavenworth would constitute an "execution" of his sentence in violation of Article 71 (c), and so declared General Bond's order invalid.[3]

Both sides appealed to the Court of Appeals for the Tenth Circuit, which reversed the District Court's grant of partial relief.  Relying on this Court's decision in *Gusik* v. *Schilder,* 340 U. S. 128 (1950), a unanimous panel held that the District Court could not properly grant petitioner any form of relief until he had first challenged the validity of his confinement before the appellate tribunals within the military system.  The court emphasized that "the Court of Military Appeals has recently held that it possesses the power to issue a habeas corpus writ" if a serviceman could demonstrate that he was illegally restrained pending appeal, and it could perceive no justification for petitioner's failure to seek the military court's assistance.  402 F. 2d 441, 442-443.  We granted certiorari to consider the propriety of the application of the rule of *Gusik* v. *Schilder* in the circumstances of this case.  393 U. S. 1048 (1969).

## II.

Shortly after the Court of Appeals announced its decision, petitioner recognized that since his sentence was

---

[3] After the District Court held that petitioner could not be lawfully transferred to Fort Leavenworth, the military significantly increased the degree of restraint that was imposed upon Captain Noyd at the Cannon Air Force Base.  Petitioner was permitted to see his family only twice each week and was forbidden to leave his quarters except for narrowly limited purposes.  See Letter Regarding Arrest in Quarters, from Col. George R. Doerr, Appendix 32-34.

scheduled to expire on December 26, 1968,[4] he might well be released from custody before this Court would have an opportunity to pass upon his claims for relief pending his appeal to the military courts. In order to avoid the possibility of mootness, petitioner promptly requested the Court of Appeals to stay its mandate and order his release pending this Court's decision on his petition for certiorari. On December 6, the Court of Appeals agreed to stay its mandate, thereby keeping the District Court's order in effect, but refused to require the military to release Captain Noyd from custody at the Cannon Air Force Base.

Petitioner then applied to MR. JUSTICE WHITE, Circuit Justice for the Tenth Circuit, for temporary release from all confinement pending this Court's action on his certiorari petition. When the Circuit Justice denied this application on December 18, 1968, a second motion of the same tenor was made to MR. JUSTICE DOUGLAS on the following day. Noting that the Court was then in recess and would not meet again until January 10, 1969, MR. JUSTICE DOUGLAS ordered that "petitioner . . . be placed in a non-incarcerated status" until the full Court could have an opportunity to pass on the issues raised in a considered manner. Pursuant to MR. JUSTICE DOUGLAS' order, petitioner was released from confinement on Christmas Eve, two days before his sentence was scheduled to expire.[5]

---

[4] While petitioner's one-year sentence began to run on March 9, 1968, when it was announced by the court-martial, the Air Force awarded him sentence credits for good behavior, thereby permitting him to obtain his release from custody after a period of some nine and one-half months.

[5] When this Court granted certiorari on January 20, 1969, we also ordered that the "[s]tay heretofore granted by MR. JUSTICE DOUGLAS shall remain in effect pending issuance of judgment of this Court or until further order of this Court." 393 U. S. 1048.

Despite Mr. Justice Douglas' order of release, the Government now suggests that this case has become moot. It claims that under the applicable military law, a judicial order that petitioner be placed in a "non-incarcerated status" was insufficient to toll petitioner's sentence, which continued to run until it expired of its own force on December 26. The Government bases this claim upon its reading of Article 57 (b) of the Uniform Code of Military Justice:

> "Any period of confinement included in a sentence of a court-martial begins to run from the date the sentence is adjudged by the court-martial, but periods during which the sentence to confinement is suspended shall be excluded in computing the service of the term of confinement." 10 U. S. C. § 857 (b).

Citing interpretive military regulations, the Government understands the statute to establish the general rule that "[t]he date the sentence of a court-martial is adjudged will mark the beginning of a sentence to confinement *whether or not the accused had then been placed in confinement.*" Apprehension and Confinement: Military Sentences to Confinement, AR 633–30; AFR 125–30. (Emphasis supplied.)

Petitioner does not disagree with the Government's understanding of the general rule, but relies on that part of the statute which expressly provides that a sentence may be tolled if it is "suspended" and the serviceman is placed on probation. Petitioner argues that since Mr. Justice Douglas' order, and this Court's confirmance of it, had the obvious purpose to preserve the *status quo* pending the full Court's consideration of the merits of his certiorari petition, the order should be understood to have "suspended" petitioner's sentence within the meaning of the statutory exception to the general rule. In response, the Government emphasizes that Mr. Justice Douglas'

order did not expressly "suspend" petitioner's sentence and so contends that the statutory exception is not applicable in this instance.

We find it unnecessary to decide this question. For even if MR. JUSTICE DOUGLAS' order did not satisfy the statutory exception, we hold that it was sufficient to interrupt the running of petitioner's sentence. Like the Court of Military Appeals, we do not believe that Congress intended that the general rule stated in Article 57 (b) be inexorably applied in all situations which do not fall within the "suspension of sentence" exception:

> "Congress did not mention all contingencies which would prevent an accused from being credited with time served. Common sense suggests that if an accused escaped from confinement, his period of service would be interrupted and he would be required to make up the time at the end of the period." *United States* v. *Bryant,* 12 U. S. C. M. A. 133, 137, 30 C. M. R. 133, 137 (1961).

We think it equally clear that Article 57 (b) was not intended to give a litigious serviceman a bonus when he obtains temporary release from confinement the military was seeking to impose. Rather, the statute serves to protect a convicted serviceman whom the military wishes to release from confinement before his term has run. If a serviceman's commanding officer simply releases him from confinement without "suspending" his sentence, the Code does not demand that the serviceman be given a hearing before he is reincarcerated. In contrast, the Code demands that once a sentence is "suspended," it may not be reinstated unless the accused is given a hearing, at which he is represented by counsel, in order to determine whether he has violated the conditions of his probation. 10 U. S. C. § 872 (a). Article 57 (b), then, represents Congress' decision that even though a man is temporarily set at liberty, he should be given sentence

credit unless he is sure that his freedom will not be curtailed at a later date without a plenary hearing. Obviously, the statute's purpose will not be served in the present case, where Captain Noyd's liberty will only be limited once again after a full argument before the judiciary.

In recognition of this fact, the Manual for Courts-Martial has, since its promulgation in 1951, required that a serviceman not be given credit for the time during which he has obtained release from confinement in cases like the present one. The Manual, which has the force of law unless it is "contrary to or inconsistent with" the Uniform Code Congress has enacted, 10 U. S. C. § 836 (a), provides:

> "A sentence to confinement . . . is continuous until the term expires, with certain exceptions. These exceptions include the following:

> .     .     .     .     .

> "Periods during which the person undergoing such a sentence is absent without authority . . . or is erroneously released from confinement through misrepresentation or fraud on the part of the prisoner, or is *erroneously released from confinement upon his petition for a writ of habeas corpus under a court order which is later reversed by a competent tribunal* . . . ." § 97 (c), Manual for Courts-Martial, United States (1951). (Emphasis supplied.)

Thus, the Manual requires that a serviceman receive no sentence credit for the period he has avoided confinement if the judicial decision granting him freedom is reversed on appeal. It follows *a fortiori* that the principles established in the Manual require that Captain Noyd be denied sentence credit as well. For in the present litigation, petitioner has not convinced *any* court that he may properly be relieved from all confinement. Petitioner

obtained his release from MR. JUSTICE DOUGLAS simply by showing that his chances of success on the merits were sufficiently great to warrant the grant of interlocutory relief. Surely, he is not entitled to more favorable sentencing treatment than the serviceman who has at least convinced one court that his claim to release is legally sound but whose arguments have not been upheld on appeal.

We hold that the principles of the Manual for Courts-Martial operated to interrupt the running of Captain Noyd's sentence at the time of his release on December 24, 1968, and hence that the case before us is not moot.

## III.

We now turn to consider whether petitioner could properly seek his release in civilian courts without making any effort to invoke the assistance of the courts within the military system. *Gusik* v. *Schilder*, 340 U. S. 128 (1950), established the general rule that habeas corpus petitions from military prisoners should not be entertained by federal civilian courts until all available remedies within the military court system have been invoked in vain. MR. JUSTICE DOUGLAS, for a unanimous Court, explained some of the important reasons which require civilian courts to respect the integrity of the military court system that Congress has established:

> "An analogy is a petition for habeas corpus in the federal court challenging the jurisdiction of a state court. If the state procedure provides a remedy, which though available has not been exhausted, the federal courts will not interfere. . . . The policy underlying that rule is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts. If an available procedure has not been employed to rectify the alleged error which the federal court is asked

to correct, any interference by the federal court may be wholly needless. The procedure established to police the errors of the tribunal whose judgment is challenged may be adequate for the occasion. If it is, any friction between the federal court and the military or state tribunal is saved. . . . Such a principle of judicial administration is in no sense a suspension of the writ of habeas corpus. It is merely a deferment of resort to the writ until other corrective procedures are shown to be futile." *Id.,* at 131–132.

It is true, of course, that the principles of federalism which enlighten the law of federal habeas corpus for state prisoners are not relevant to the problem before us. Nevertheless other considerations require a substantial degree of civilian deference to military tribunals. In reviewing military decisions, we must accommodate the demands of individual rights and the social order in a context which is far removed from those which we encounter in the ordinary run of civilian litigation, whether state or federal. In doing so, we must interpret a legal tradition which is radically different from that which is common in civil courts.

It is for these reasons that Congress, in the exercise of its power to "make Rules for the Government and Regulation of the land and naval Forces," [6] has never given this Court appellate jurisdiction to supervise the administration of criminal justice in the military. When after the Second World War, Congress became convinced of the need to assure direct civilian review over military justice, it deliberately chose to confide this power to a specialized Court of Military Appeals, so that disinterested civilian judges could gain over time a fully developed understanding of the distinctive problems and legal traditions of the Armed Forces.

---

[6] Constitution of the United States, Art. I, § 8, cl. 14.

Almost one year before petitioner sought habeas corpus relief from the Federal District Court sitting in New Mexico, the Court of Military Appeals had held that it would, in appropriate cases, grant the relief petitioner now demands from us. *Levy* v. *Resor*, 17 U. S. C. M. A. 135, 37 C. M. R. 399 (1967).[7] Petitioner, however, has made no effort to invoke the jurisdiction of the Court of Military Appeals. Nevertheless, he would have civilian courts intervene precipitately into military life without the guidance of the court to which Congress has confided primary responsibility for the supervision of military justice in this country and abroad.

Petitioner emphasizes that in the present case we are not called upon to review prematurely the merits of the court-martial proceeding itself. Instead, we are merely asked to determine the legality of petitioner's confinement while he is exercising his right of appeal to the

---

[7] The Government does not renew the arguments it has on occasion advanced before the Court of Military Appeals, see Brief in Support of Motion to Strike and Dismiss Petition, *United States* v. *Frischholz*, Docket No. 14,270 (1965), to the effect that the Court of Military Appeals lacks the power to grant emergency writs. In its decision in the *Frischholz* case, 16 U. S. C. M. A. 150, 36 C. M. R. 306 (1966), the Court of Military Appeals properly rejected the Government's argument, holding that the All Writs Act, 28 U. S. C. § 1651 (a), permitted it to issue all "writs necessary or appropriate in aid of [its] . . . jurisdiction." Since the All Writs Act applies by its terms to any "courts established by Act of Congress," and since the Revisers of 1948 expressly noted that "[t]he revised section extends the power to issue writs in aid of jurisdiction, to all courts established by Act of Congress, thus making explicit the right to exercise powers implied from the creation of such courts," we do not believe that there can be any doubt as to the power of the Court of Military Appeals to issue an emergency writ of habeas corpus in cases, like the present one, which may ultimately be reviewed by that court. A different question would, of course, arise in a case which the Court of Military Appeals is not authorized to review under the governing statutes. Cf. *United States* v. *Bevilacqua*, 18 U. S. C. M. A. 10, 39 C. M. R. 10 (1968).

higher military courts. It is said that there is less justification for deference to military tribunals in ancillary matters of this sort. We cannot agree. All of the reasons supporting this Court's decision in *Gusik* v. *Schilder, supra,* are applicable here. If the military courts do vindicate petitioner's claim, there will be no need for civilian judicial intervention. Needless friction will result if civilian courts throughout the land are obliged to review comparable decisions of military commanders in the first instance. Moreover, if we were to reach the merits of petitioner's claim for relief pending his military appeal, we would be obliged to interpret extremely technical provisions of the Uniform Code which have no analogs in civilian jurisprudence, and which have not even been fully explored by the Court of Military Appeals itself. There seems little reason to blaze a trail on unfamiliar ground when the highest military court stands ready to consider petitioner's arguments.[8]

Petitioner contends, however, that the Court of Military Appeals cannot be expected to protect his rights in a fully effective way. His principal argument is based on the simple fact that the Court of Military Appeals sits exclusively in Washington, D. C. Thus, before a service-

---

[8] Petitioner contends that our decisions in *Toth* v. *Quarles,* 350 U. S. 11 (1955); *Reid* v. *Covert,* 354 U. S. 1 (1957); and *McElroy* v. *Guagliardo,* 361 U. S. 281 (1960), justify his position that exhaustion of military remedies is not required in this case. The cited cases held that the Constitution barred the assertion of court-martial jurisdiction over various classes of civilians connected with the military, and it is true that this Court there vindicated complainants' claims without requiring exhaustion of military remedies. We did so, however, because we did not believe that the expertise of military courts extended to the consideration of constitutional claims of the type presented. Moreover, it appeared especially unfair to require exhaustion of military remedies when the complainants raised substantial arguments denying the right of the military to try them at all. Neither of these factors is present in the case before us.

man may invoke its habeas corpus jurisdiction, he must somehow obtain a lawyer willing and able to conduct a lawsuit in the Nation's Capital. It is said that this practical difficulty makes it clear that the Court of Military Appeals cannot provide petitioner with adequate relief.

This argument seems to us far too sweeping to be acceptable. Individuals convicted of crime in the civil judicial system are often obliged to appeal to state courts which are far distant from the place at which they are incarcerated. Nevertheless, this fact alone has never been considered sufficient to permit a federal district court to consider a petition for habeas corpus without demanding that the prisoner exhaust all of the presently available remedies offered by the State's appellate courts. Similarly, the fact that Captain Noyd is confined far from Washington, D. C., is not enough, standing alone, to permit him to circumvent the military court system.

Noyd argues, however, that the great distance of the Court of Military Appeals is of special significance in cases like the present one, where speed is essential if relief is to be at all effective. But petitioner concedes that the Court of Military Appeals has thus far acted speedily when confronted with an application for an emergency writ,[9] and there is no reason to believe that the court would not have responded rapidly if Captain Noyd had sought its assistance.[10] Nor has petitioner

---

[9] In *Levy* v. *Resor, supra,* a petition for emergency relief was filed on June 20, 1967. The Court of Military Appeals promptly ordered oral argument and filed a full opinion on July 7, 1967. Both the petitioner and the Government indicate that a subsequent habeas corpus application filed by Captain Levy was ruled on by the Court of Military Appeals within five days after its submission.

[10] Consequently, we need not decide how long a serviceman must wait for a decision on his application by the Court of Military Appeals before he may petition for a writ of habeas corpus from the appropriate civilian court.

ever suggested that it was impossible for him to obtain a lawyer who was willing to present an appropriate application before the Court of Military Appeals with the requisite dispatch.

Instead, petitioner simply argues that other servicemen in other situations could conceivably have great difficulty in obtaining a lawyer who was able to move quickly before the military court sitting in Washington. Moreover, it is said that the Court of Military Appeals would be inundated with applications for emergency writs if all servicemen in petitioner's position were required to seek relief within the military system. It will be time enough, however, to consider these problems when, and if, they arise. It may be that situations like the present one are unusual, or that the Court of Military Appeals will be able to announce clear rules as to the proper treatment of convicted prisoners pending appeal, or that Congress will act to facilitate the hearing of applications for emergency writs within the military system. Since petitioner has at no time attempted to show that prompt and effective relief was unavailable from the Court of Military Appeals in his case, we hold that petitioner's failure to exhaust this remedy before seeking the assistance of the civilian courts is not excused.[11]

---

[11] The Government suggests that petitioner should also be required to exhaust a second remedy allegedly afforded him within the military system. It is said that Captain Noyd should have requested the Air Force Board of Review to release him pending the exhaustion of his rights of appeal. The Government, however, cites no decision of a Board of Review which asserts the power to grant emergency interlocutory relief prior to the Board's consideration of a case on the merits; nor are we referred to any statute which unequivocally grants this authority. In the absence of any attempt by the Boards of Review to assert such a power, we do not believe that petitioner may properly be required to exhaust a remedy which may not exist. Cf. *Union Pacific R. Co.* v. *Weld County*, 247 U. S. 282 (1918); *Township of Hillsborough* v. *Cromwell*, 326 U. S. 620 (1946).

Accordingly, the judgment of the Court of Appeals is affirmed. In light of the substantial questions raised by petitioner, however, we think it plain that petitioner in no sense acted in bad faith when he failed to exhaust his military remedies before invoking the jurisdiction of the District Court. Consequently, we consider it appropriate for us to continue MR. JUSTICE DOUGLAS' order in effect until our mandate issues, in order to give petitioner an opportunity to present his arguments to the Court of Military Appeals. See 28 U. S. C. § 1651 (a); cf. *Phillips* v. *United States*, 312 U. S. 246, 254 (Mr. Justice Frankfurter). While it is true that Captain Noyd has only two days yet to serve on his sentence, he should not be required to surrender his freedom for even this short time unless it is found that the law so requires.

*It is so ordered.*

MR. JUSTICE BLACK concurs in the result.

MR. JUSTICE WHITE, dissenting.

The petition for certiorari in this case sought a determination that petitioner was being subjected to illegal restraints pending the appeal of his court-martial conviction to the appropriate tribunals. Since his sentence had begun to run at the time it was imposed, it would have expired on December 26, 1968, unless suspended or otherwise interrupted. Hence when the petition was filed here, the most petitioner had to gain from this litigation, which does not reach the merits of his conviction, was that for the duration of his sentence—two days at the time MR. JUSTICE DOUGLAS ordered his release from confinement—he was not to be subject to the restraints then being imposed on him. Surely this is a picayune issue which does not warrant decision here in any event, either alone or in conjunction with the

exhaustion question.    Petitioner should not have brought the custody question to the federal courts in the first place; and by the same token, if to preserve the issue he desired suspension of his sentence or its equivalent, that matter also should have been presented first to the military tribunals rather than to the District Court. I would dismiss the writ as improvidently granted.