**Esequiel TORRES, Sergeant, U. S. Army**

v.

**Albert O. CONNOR, Lt. General, U. S. Army, as Commanding General, Third United States Army.**

**Robert W. T'SOUVAS, Specialist Four, U. S. Army**

v.

**Albert O. CONNOR, Lt. General, U. S. Army, as Commanding General, Third United States Army.**

**Civ. A. Nos. 13895, 13940.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 10, 1970.

Charles L. Weltner, Atlanta, Ga., for plaintiff.

Beverly Bates, U. S. Dist. Atty., Atlanta, Ga., for defendant.

Before BELL, Circuit Judge, SMITH and HENDERSON, District Judges.

HENDERSON, District Judge:

Esequiel Torres and Robert W. T'Souvas, members of the U.S. Army, filed separate actions in this court to enjoin the defendant from subjecting them to trial by general court martial. Each has been charged with violations of the Uniform Code of Military Justice (U.C. M.J.); specifically murder, in violation of Article 118, and, in the case of Torres, also assault with the intent to murder, in violation of Article 134. These crimes allegedly arose in connection with the My Lai incident of March, 1968. Both plaintiffs claim that to subject them to court martial would violate fundamental constitutional rights

and cause them irreparable damage for which no adequate remedy exists at law.

Federal question jurisdiction exists under 28 U.S.C. § 1331 since the amount in controversy is alleged in excess of $10,000 and the actions arise under the Constitution and laws of the United States.

Torres, on June 24, 1970, requested that a three-judge court be convened pursuant to 28 U.S.C. § 2282, and that defendant be temporarily restrained from trying him, pending that hearing. A temporary restraining order issued, and on July 2, 1970, a preliminary injunction was entered prohibiting defendant from placing Torres on trial until further order.

T'Souvas filed a virtually identical complaint against defendant on July 13, 1970. In view of the similarities, these cases were consolidated for purposes of argument before a three-judge district court on July 15, 1970. At the hearing, following argument, the preliminary injunction in the Torres case was dissolved; however, the Army, acting upon the court's request, agreed to stay all proceedings against plaintiffs for at least 21 days to allow submission by plaintiffs of briefs and proffers of evidence, and decision by this court.

Torres alleges fifteen grounds in support of his application for injunctive relief. T'Souvas repeats these and asserts two additional grounds. Essentially, plaintiffs claim a court martial would violate rights guaranteed them by the Fifth, Sixth and Eighth Amendments of the Constitution, and also would be in violation of Article III, Sections 1 and 2. Plaintiffs' constitutional attack is based upon alleged deficiencies common to all military tribunals, the illegality of the Viet Nam War, and the peculiar facts and circumstances surrounding the My Lai incident. Plaintiffs attack the failure of the U.C.M.J. to provide for military tribunals comprised of disinterested and impartial triers of fact; to provide for unanimous findings by the triers of fact to obtain a conviction; to provide the form, manner or means of punishment; to provide for the right of an accused to confront witnesses; to provide for speedy trials; and to provide trial by jury. Because of these broad attacks against the U.C.M.J., granting relief on these grounds would necessitate an injunction against the execution of an Act of Congress, the U.C.M.J., for repugnance to the Constitution of the United States. Accordingly, a three-judge court was empaneled to determine whether these cases were properly for a three-judge rather than a single-judge court, pursuant to 28 U.S.C. §§ 2282, 2284.

At the July 15, 1970, hearing before this court, it was noted that these cases raised three-judge questions, and jurisdiction was assumed under Section 2282. Next, considering the merits of the claims, the court rejected plaintiffs' attacks against the U.C.M.J. The Supreme Court has recognized that trial by a military tribunal deprives one of trial by jury and other constitutional rights, Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); however, the Court has not ruled the U.C.M.J. unconstitutional. Rather, the Court has acted, in recent landmark decisions such as O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); Reid v. Covert, *supra,* and United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S. Ct. 1, 100 L.Ed. 8 (1957), to restrict military jurisdiction to the narrowest limits consistent in the power granted Congress in Art. I, Sec. 8, Cl. 14, "To make Rules for the Government and Regulation of the land and naval Forces". This court will not hold the U.C.M.J. unconstitutional for deficiencies which the Supreme Court has long acknowledged in those cases which are properly subject to military jurisdiction. There can be no doubt that plaintiffs are subject to military jurisdiction, as both are members of the armed forces and, clearly, the alleged crimes are service-connected. O'Callahan v. Parker, *supra.*

We also rejected the contention that the question of the legality of the Viet Nam War provides a basis for interven-

tion by this court into the court martial jurisdiction of the Army under the circumstances alleged. See on the question of the legality of the war: Orlando v. Laird, 317 F.Supp. 1013 (E.D.N.Y.1970) (the lack of a formal declaration of war by Congress is without legal effect); and see also Simmons v. United States, 406 F.2d 456, 460 (5th Cir. 1969); and Luftig v. McNamara, 126 U.S.App.D.C. 4, 373 F.2d 664, 665 (1967).

What remained of plaintiffs' contentions after the July 15th hearing were those grounds alleging that it would be fundamentally unfair, in view of the peculiar facts and circumstances surrounding the My Lai incident, to require plaintiffs to be tried by court martial. Such problems as command influence, pre-trial publicity, denial of effective right of counsel, inability to obtain relief within the military system, and selective prosecution were raised during argument to illustrate the fundamental unfairness of requiring plaintiffs to be subjected to military trial. Following the hearing plaintiffs were afforded ten days within which to proffer evidence establishing the fundamental unfairness which they were prepared to establish by competent evidence. Plaintiffs' proffers were submitted, in camera, on July 27; and, on July 29, by order of this court, the proffers were made public and part of the record. Defendant's response to the proffers was submitted on July 31.

The defendant filed a motion to dismiss on July 28, 1970, making four contentions. First, it is claimed that a district court has no jurisdiction to enjoin a court martial. Secondly, defendant urges that plaintiffs' allegations fail to state a basis for the exercise of jurisdiction by a three-judge district court. Thirdly, defendant asserts that plaintiffs' failure to exhaust available military remedies means they have not stated a claim for relief. Lastly, defendant argues that plaintiffs' allegations are facially without merit. Because of the conclusion we have reached, it is unnec-

essary to consider all four of the points raised in defendant's motion.

■ Upon consideration of the full record in these cases including the memoranda filed, the hearing of July 15, the defendant's motion to dismiss and the proffers of evidence, we hold that plaintiffs have failed to demonstrate such fundamental unfairness as would warrant this court enjoining the court martial. This holding should in no way be read as casting light on the merits of plaintiffs' due process contentions. We have not rejected the claims on command influence, pre-trial publicity, and the other matters proffered; we have merely rejected plaintiffs' argument that it would be fundamentally unfair to require these matters be first raised in the military courts. Our ruling relates to the timing, rather than the merits, of this suit.

In reaching this conclusion, we rely primarily on the belief that plaintiffs have an adequate remedy at law. Congress has established a system of court martial procedure uniformly applicable to all branches of the armed forces, including final appellate review by the United States Court of Military Appeals, an independent tribunal composed of three civilians appointed by the President. Congress has not given the Supreme Court appellate jurisdiction to supervise the administration of the separate branch of military courts, Noyd v. Bond, 395 U.S. 683, 694, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969), thus emphasizing the separation between the military courts and the federal courts.

Here there are military proceedings pending against plaintiffs which they seek to enjoin in federal court. This is directly analogous to the situation where an individual against whom state criminal proceedings have been commenced seeks the aid of the federal courts to enjoin further state prosecution. Only within the narrow limits prescribed by Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), where First Amendment rights are involved,

will the federal courts enjoin a state prosecution. The reluctance of federal courts to interfere with the operations of a co-ordinate judicial system was aptly stated in City of Greenwood, Miss. v. Peacock, 384 U.S. 808 at 828, 86 S.Ct. 1800 at 1812, 16 L.Ed.2d 944 (1968):

> * * * the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted * * * that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.

We perceive no reason why similar deference ought not to be accorded the military courts established by Congress under Art. I, Sec. 8, Cl. 14 of the Constitution.

■ As in In Re Kelly, 401 F.2d 211 (5th Cir. 1968), a case in which it was attempted to enjoin a court martial, we are unwilling to presume that the military courts will not fully and fairly consider the claims of plaintiffs. We find there is insufficient reason to depart from the well-established policy that once a member of the armed forces commits an offense and the military justice process is initiated, the federal courts will not interfere until that process has been exhausted. Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950); Noyd v. Bond, supra; Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1952); Levy v. Corcoran, 128 U.S.App.D.C. 388, 389 F. 2d 929 (1967); In Re Kelly, *supra;* Green v. Laird, Civ. No. 1700–70 (D.D. C., decided July 9, 1970); and MacDonald v. Flanagan, Civil No. 915 (E.D. N.C., decided July 19, 1970). Plaintiffs' proffers of evidence fail to overcome the strong policy reasons for requiring exhaustion of military remedies in these cases. The traditional manner of seeking relief in the federal courts from constitutionally defective court martial action is by habeas corpus. Should plain-

tiffs be convicted in the military courts, this course will be available to them.

Accordingly, defendant's motion to dismiss is granted for failure to exhaust military remedies.