EFFRON, Judge
(concurring in part and in the result):
I agree that Petitioner is entitled to a hearing under United States v. DuBay, 17, C.M.A. 147, 37 C.M.R. 411 (1967), and I agree with the structure of the hearing outlined in the lead opinion.
I write separately to address a threshold question on which we have not previously written: What standards and procedures should we apply in considering a petition for habeas corpus filed during the period between the completion of direct legal review under Article 71, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 871 (2000), and final action under Article 76, UCMJ, 10 U.S.C. § 876 (2000)? Legislation and judicial decisions in the Article III courts provide important restrictions on habeas review in the civilian sector. We should apply those limitations to habeas corpus review of court-martial convictions under the All Writs Act, 28 U.S.C. § 1651(a) (2000).
Applying the pertinent standards and procedures, we should expressly reject Petitioner’s request for retroactive application of the Supreme Court’s decisions arising after completion of direct review under Article 71, UCMJ. Likewise, we should apply those standards and procedures to assess the validity of our decision on direct review regarding Petitioner’s ineffective assistance of counsel claim under the Sixth Amendment to the Constitution. U.S. Const. amend VI; see Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In that regard, we are not bound by our decision on direct review, which reached a conclusion regarding ineffective representation of counsel — a mixed question of fact and law — without first determining whether Petitioner received a full and fair healing on the factual and legal grounds for his claims.
I. BACKGROUND
Petitioner has requested extraordinary relief in the nature of a writ of habeas corpus under the All Writs Act, 28 U.S.C. § 1651(a). The Act authorizes “all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions.” Petitioner challenges the validity of the death sentence adjudged by a general court-martial following his conviction of several offenses, including premeditated murder.
*154 On direct review, Petitioner’s death sentence was affirmed by the Army Court of Military Review (now designated as the Army Court of Criminal Appeals), this Court, and the Supreme Court of the United States. United States v. Loving, 34 M.J. 956 (A.C.M.R.1992), on reconsideration, 34 M.J. 1065 (A.C.M.R.1992); United States v. Loving, 41 M.J. 213 (C.A.A.F.1994); Loving v. United States, 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996). The decision of the Supreme Court constitutes the final judgment as to the legality proceedings on direct review. See Article 71(c)(1), UCMJ.
Although legal review has been completed, the case is not yet final under Article 76, UCMJ, because the President has not acted on the death sentence. See Article 71(a), UCMJ, (“that part of the sentence providing for death may not be executed until approved by the President”).
During the period following the Supreme Court’s decision, Petitioner has sought collateral review of his conviction. See Loving v. United States, 62 M.J. 235, 238 (C.A.A.F.2005) (summarizing the appellate history of the case on direct and collateral review). Last year, we rejected Petitioner’s request that we issue a writ of coram nobis to correct alleged errors in the proceedings. Id. at 260. After reviewing the relationship between the writs of eoram nobis and habeas corpus, we observed that under applicable federal law, a writ of coram nobis could not provide a basis for relief if any other remedy remained available. Id. at 253. We concluded that because a writ of habeas corpus remained available for consideration by this Court under the All Writs Act, Petitioner could not “properly file a writ of coram nobis here.” Id. at 256. We also declined to recharacterize Petitioner’s coram nobis request as a habeas corpus petition, leaving the decision with Petitioner as to whether a habeas corpus petition should be filed with our Court. Id. at 259.
Petitioner now has requested a writ of habeas corpus. He contends that he did not receive the effective assistance of counsel, as guaranteed by the Sixth Amendment to the Constitution, because his trial defense counsel failed to conduct a reasonable investigation into the reasonably available mitigating evidence. See Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052. Petitioner also contends that the President, in issuing rules for death penalty sentencing proceedings in the military: (1) exceeded his authority by promulgating aggravating factors in sentencing that should have been treated as functional elements of the crime during findings; and (2) failed to require that the court-martial panel find beyond a reasonable doubt during sentencing that any mitigating circumstances are outweighed by permissible aggravating factors. See Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
II. HABEAS CORPUS
During the period between final legal review under Article 71(a), UCMJ, and final action under Article 76, UCMJ, a service-member is required to exhaust his or her remedies under the UCMJ before seeking collateral review in the Article III courts. See Clinton v. Goldsmith, 526 U.S. 529, 537 n. 11, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999). One of those remedies is a petition to this Court for a writ of habeas corpus under the All Writs Act. See Noyd v. Bond, 395 U.S. 683, 695 n. 7, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969); Loving, 62 M.J. at 248-51.
In the past, this Court has considered petitions requesting relief following completion of legal review under Article 71(a), UCMJ, but we have not expressly addressed the standards and procedures for reviewing such petitions under the All Writs Act. See, e.g., Garrett v. Lowe, 39 M.J. 293 (C.M.A.1994). The All Writs Act “authorizes the employment of extraordinary writs.... ” Clinton, 526 U.S. at 534, 119 S.Ct. 1538. The All Writs Act, however, does not empower this Court “to act as a plenary administrator” of all judgments that we have affirmed. Id. at 536, 119 S.Ct. 1538.
The standards and procedures for consideration of petitions during the period between final legal review under Article 71(a), UCMJ, and final action under Article 76, UCMJ, must ensure that relief is limited to circumstances warranting an extraordinary writ. As in the Article III courts, habeas *155 corpus must be narrowly circumscribed by the standards and procedures applicable to collateral review. Otherwise, the writ could be used to routinely circumvent the time limitations on matters such as petitions for reconsideration (see C.A.A.F. R. 31) and petitions for new trials (see Article 73, UCMJ, 10 U.S.C. § 873 (2000)).
Both Congress and the Article III courts have given a great deal of attention to limiting the availability of the habeas corpus writ for post-conviction review of civilian criminal cases. See, e.g., Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (amending 28 U.S.C. §§ 2251-55 (2000), and inserting 28 U.S.C. §§ 2261-66 (2000)); Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). The core principles applied in Article III habeas proceedings provide a useful framework for our consideration of post-conviction habeas petitions in the military justice system under the All Writs Act.
We must exercise care, however, in borrowing from the standards and procedures developed for use in the Article III courts. Many aspects of habeas corpus litigation in the Article III courts are not readily transferred to the court-martial process, particularly the federalism considerations applicable to collateral review of state court criminal proceedings. Given the complex and dynamic nature of case law developments in the Article III courts, we should limit our adaptation to those standards and procedures necessary to decide the case before us.
A. APPLICABLE STANDARDS FOR HABEAS REVIEW
1. Constitutional claims
In a habeas review of a federal civilian conviction under 28 U.S.C. § 2255, the test for constitutional error is whether “there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.” In habeas review of state court convictions under 28 U.S.C. § 2254(d), the statute provides a two-tiered approach, with separate standards for questions of law and fact. With respect to issues of law, the question is whether the challenged decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). With respect to factual determinations, the statute employs a presumption of correctness, asking whether the prior proceeding “resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(2).
At least one Article III court during collateral review of prior, military justice proceedings has applied the § 2254(d) standards relevant to review of state court proceedings. Brosius v. Warden, 278 F.3d 239, 245 (3d Cir.2002). From the perspective of whether an extraordinary writ should be issued by our Court, we need not develop a unique standard. In terms of restricting the scope of collateral review, the more detailed guidance in § 2254(d) is preferable to the broad language of § 2255. Because we are not literally reviewing a state proceeding, the § 2254(d) standard of factual review may be expressed as follows: whether the prior proceeding resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the prior proceeding.
2. Nonconstitutional federal claims
Habeas review of state court proceedings under 28 U.S.C. § 2254 typically involves constitutional claims. See Richard H. Fallon, Jr., Daniel J. Meltzer & David L. Shapiro, Hart and Wechsler’s The Federal Courts and the Federal System 1297 (5th ed.2003). As a result, § 2254 does not provide a useful model for review of habeas claims based upon nonconstitutional federal requirements. Habeas review of federal civilian convictions is governed largely by the case law developed under the broad language of 28 U.S.C. § 2255. Habeas review of military justice cases in the Article III courts takes place under 28 U.S.C. § 2241, under standards that vary widely among the circuits. See United States ex rel. New v. Rumsfeld, 448 *156 F.3d 403 (D.C.Cir.2006). Because the present case does not involve a noneonstitutional claim, we need not at this time select a specific standard for habeas review of non-constitutional military justice issues under the All Writs Act.
B. PROCEDURAL CONCERNS IN HABEAS REVIEW
1. Retroactivity of a new rule in a habeas claim
As noted in the lead opinion, a decision announcing a new rule of constitutional procedure applies to all cases pending on direct review. Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). During collateral review of a final decision, however, there are different considerations. In Teague, the Supreme Court limited the retroactive application of new constitutional law decisions during federal habeas review of state convictions, citing concerns about finality and efficiency. 489 U.S. at 309-10, 109 S.Ct. 1060. The Supreme Court held that a “ ‘habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place.’ ” Id. at 306, 109 S.Ct. 1060 (quoting Desist v. United States, 394 U.S. 244, 262-63, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969)).
The Supreme Court identified two exceptions under which new rules could be given retroactive application during habeas review: (1) where a new rule “places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe”; and (2) where a rule articulates fundamental procedures “without which the likelihood of an accurate conviction is severely diminished.” Id. at 311-13, 109 S.Ct. 1060 (citation and quotation marks omitted). In view of the importance of finality and efficiency in the military justice system, we should expressly state that the Teague principles apply to habeas review of court-martial cases under the All Writs Act.
2. Procedural default of a habeas claim
When a case is subject to habeas review in the Article III courts, failure to raise a claim during prior proceedings normally constitutes a procedural default unless the petitioner “can show cause for the default and prejudice resulting therefrom.” Teague, 489 U.S. at 298, 109 S.Ct. 1060; see United States v. Frady, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); Wainwright v. Sykes, 433 U.S. 72, 84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). With respect to a claim of ineffective assistance of counsel, however, the Supreme Court in Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), declined to invoke the procedural default doctrine to preclude a petitioner from raising that issue on habeas review when he had not raised it on direct review. Id. at 504, 123 S.Ct. 1690. Focusing primarily on the often incomplete or inadequate development of the record for purposes of resolving an ineffective counsel claim, the Supreme Court stated that “in most cases” collateral review actually is “preferable to direct appeal for deciding claims of ineffective assistance of counsel.” Id. at 504, 123 S.Ct. 1690. In the present case, the Government has not raised the defense of procedural default, so we need not determine how the procedural default doctrine and its various exceptions should apply in the context of a military justice habeas case under the All Writs Act. See 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 41.7b, at 1958-59 (5th ed.2005).
3. Relationship of habeas claims to direct review
In the present case, Petitioner raised an issue of ineffective assistance of counsel on direct review. Assuming for present purposes that the claim he made on direct review fairly includes the claims he makes in the pending habeas petition, we should assess the relationship between consideration of ineffective assistance on direct review and subsequent consideration upon habeas review under the All Writs Act.
The Supreme Court in Massaro expressly declined to address the impact of direct review of an ineffective assistance of counsel claim on a subsequent habeas petition, observing that “certain questions may arise in subsequent proceedings under § 2255 con *157 cerning the conclusiveness of determinations made on the ineffective-assistance claims on direct appeal; but these matters of implementation are not before us.” 538 U.S. at 508-09, 123 S.Ct. 1690. In the present case, the conclusiveness of our ineffective-assistance determinations on direct review is directly related to adequacy of the record and the absence of a hearing, matters that are considered in sections 4 and 5, infra.
4. Development of the habeas record
In federal habeas review of a state conviction, a petitioner may obtain an evidentiary hearing, subject to a variety of limitations imposed by statute and case law concerning presumptions and deference to state court factfinding. See 28 U.S.C. § 2254(d)-(e). If a petitioner “failed to develop the factual basis of a claim in State court proceedings,” the federal habeas court may not grant a hearing unless:
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
28 U.S.C. § 2254(e)(2)(A)-(B).
The term “failed to develop,” however, does not apply unless the failure to develop facts in the prior proceeding is attributable to the petitioner. See Williams v. Taylor, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). For example, if a state has not held an evidentiary hearing, a petitioner has not “faded to develop” the factual basis for the claim, and the court determines whether a hearing is necessary under the standards applicable to a procedural default. See Bryan v. Mullin, 335 F.3d 1207 (10th Cir.2003). When a petitioner alleges grounds that would warrant issuance of a writ, facts are in dispute, and the state has not provided a full and fair hearing to resolve the factual matter, the federal court will provide a habeas hearing. See, e.g., Bell v. True, 413 F.Supp.2d 657, 699 (W.D.Va.2006); King v. Bell, 392 F.Supp.2d 964, 974 (M.D.Tenn.2005).
In habeas review of federal convictions under § 2255, the opportunity to obtain a federal hearing is broader. The habeas court will hold a hearing to make findings of fact and conclusions of law “[ujnless the motions and the files and the records in the case conclusively show that the prisoner is entitled to no relief____” Although issues of comity and federalism account for the difference between the standards applicable for review of state and federal convictions, the underlying result is the same — development of a record, either on direct review or during collateral review, that provides a foundation for evaluating the habeas claim.
The military justice system does not have standing trial courts. See Articles 22 and 23, UCMJ, 10 U.S.C. §§ 822, 823 (2000) (designating officials authorized to “convene” general and special courts-martial). Once the convening authority has acted on a case, there is no trial-level forum available to consider post-conviction matters reviewed by trial courts in civilian cases, such as ineffective assistance of counsel. See DuBay, 17 C.M.A. at 149 n. 2, 37 C.M.R. at 413 n. 2 (“Normally, collateral issues of this type would, on remand in the civil courts, be settled in a hearing before the trial judge. The court-martial structure, under the Uniform Code of Military Justice, however, is such that this cannot be accomplished”).
In the military justice system, issues such as ineffective assistance of counsel may be raised during direct appeal, and the appellate court determines whether to order a factfinding hearing using the procedure established in DuBay. Id.; see United States v. Campbell, 57 M.J. 134, 138 (C.A.A.F.2002). In such cases, we resolve the question of whether a factfinding hearing is necessary by applying standards similar to those employed in the Article III courts in the course of deciding whether a factfinding hearing is neces *158 sary on collateral review. See United States v. Ginn, 47 M.J. 236, 248 (C.A.A.F.1997).
At the time of our direct review of Petitioner’s case, we applied a standard that arguably provided appellants with an even broader opportunity to obtain a post-conviction hearing. See, e.g., United States v. Wean, 37 M.J. 286, 288 (C.M.A.1993) (requiring a DuBay hearing or additional affidavits when defense counsel affidavits were “inadequate or nonresponsive”); United States v. Perez, 18 C.M.A. 24, 26, 39 C.M.R. 24, 26 (1968) (stating that a hearing is required to resolve conflicting affidavits if “the evidence before us does not so compellingly demonstrate [the] accuracy of recollection by one as opposed to the other ... as to justify determination of the issue on the basis of the affidavits”).
5. Habeas review of Sixth Amendment claims in the absence of a hearing during direct review
As discussed earlier, the Supreme Court in Massaro identified a number of problems associated with reliance on direct appeal to resolve ineffective counsel claims, focusing primarily on the difficulty of ascertaining the pertinent facts: “When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the objective of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.” 538 U.S. at 504-05, 123 S.Ct. 1690. With respect to the constitutional standard, the Supreme Court noted:
Under Strickland v. Washington, 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (1984), a defendant claiming ineffective counsel must show that counsel’s actions were not supported by a reasonable strategy and that the error was prejudicial. The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the Strickland analysis.
Id. at 505, 123 S.Ct. 1690. The Supreme Court emphasized that further proceedings were needed not only to ascertain the facts, but also to place the facts in the proper context:
If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel’s alternatives were even worse. The trial record may contain no evidence of alleged errors of omission, much less of the reasons underlying them. And evidence of alleged conflicts of interest might be found only in attorney-client correspondence or other documents that, in the typical criminal trial, are not introduced.
Id. (citation omitted).
The Supreme Court specifically linked the issue of factual development to the second prong of Strickland: “Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.” Id. In the course of discussing the procedure, the Supreme Court highlighted the critical role of a hearing on the issue of ineffective assistance:
The court may take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance. See, e.g., Griffin, supra, at 1109 (In a § 2255 proceeding, the defendant “has a full opportunity to prove facts establishing ineffectiveness of counsel, the government has a full opportunity to present evidence to the contrary, the district court hears spoken words we can only see in print and sees expressions we will never see, and a factual record bearing precisely on the issue is created[.]”).
Id. at 505-06, 123 S.Ct. 1690.
As noted in section U.B.3., supra, the Supreme Court left open in Massaro the question of whether consideration of a Sixth Amendment claim on direct review of a federal conviction precluded habeas review of the same matter. There is nothing in the Supreme Court’s decision, however, that suggests that it would be appropriate to pre *159 elude habeas review in a case where a petitioner, during direct review, did not have an adequate opportunity to develop the factual basis for a post-conviction Sixth Amendment claim under Strickland. On the contrary, in view of the Supreme Court’s emphasis on the importance of factfinding, it would be inappropriate to preclude habeas review of a Strickland claim previously considered on direct review unless a petitioner had a full and fair opportunity to have a court address factual matters during direct review.
This Court has no factfinding powers. See Article 67(c), UCMJ, 10 U.S.C. § 867(c) (2000). Accordingly, we can only afford an opportunity for factual resolution on direct appeal by applying the standards in Ginn to determine whether an appellant has presented a Strickland claim requiring a DuBay hearing. If an appellant has made such submission on direct review, and we have not ordered a DuBay hearing, then the appellant has not received a full and fair hearing on the Strickland issue.
III. APPLICATION OF HABEAS CORPUS PRINCIPLES
A. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM
In evaluating Petitioner’s claim of ineffective assistance of counsel in failing to conduct a reasonable investigation into reasonably available mitigating evidence under the standards and procedures identified in part II, supra, we look to determine whether defense counsel’s decisions as to this investigation were “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). That “clearly established Federal law” is found in Strickland, 466 U.S. at 690, 104 S.Ct. 2052.
The Strickland Court articulated a two-pronged test for determining the claimed ineffectiveness of defense counsel’s representation. First, in light of the facts and all the circumstances of the particular case, and when viewed at the time of counsel’s conduct, were the complained-of acts or omissions outside the wide range of professionally competent assistance? Id. at 690, 104 S.Ct. 2052. That is, did the performance fall “below an objective standard of reasonableness” measured “under prevailing professional norms”? Id. at 688,104 S.Ct. 2052. Second, is there a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different — a probability sufficient to undermine confidence in the outcome? Id. at 694, 104 S.Ct. 2052. Pertinent to the petition now before us, the Supreme Court stated:
These standards require no special amplification in order to define counsel’s duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel’s judgments.
Id. at 690-91, 104 S.Ct. 2052.
Petitioner argues that, in evaluating the reasonableness of his defense counsel’s investigation, we ought to apply retroactively what he considers to be a “new rule” found in the Supreme Court’s intervening decision in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). There, the Supreme Court found ineffective representation by a defense counsel in a capital case who failed to pursue leads and to expand the mitigation investigation into the defendant’s traumatic life history. Id. at 519-34, 123 S.Ct. 2527.
Apart from whether retroactive application would be appropriate under the standards discussed in section II.B.l., supra, there is no basis upon which to conclude that the *160 decision in Wiggins represents a “new rule.” After discussing its earlier decision in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), and referring to that opinion as “illustrative of the proper application of [the Strickland] standards,” the Wiggins Court said of its decision in Williams: “In highlighting counsel’s duty to investigate, ... we applied the same ‘clearly established’ precedent of Strickland we apply today.” Wiggins, 539 U.S. at 522, 123 S.Ct. 2527. Accordingly, recognizing that both Williams and Wiggins serve only to illustrate the appropriate application of Strickland’s standard to claims of inadequate investigation, they do not represent a “new rule” for purposes of retroactive application. As such, we should reject Petitioner’s reliance on Wiggins as the basis for relief or as a vehicle for retroactively applying any new legal concepts during collateral review of Petitioner’s Sixth Amendment claims. See Smith v. Dretke, 422 F.3d 269, 279 (5th Cir.2005). Applying the limitations on retroactivity that govern habeas proceedings, Strickland, not Wiggins, provides the appropriate yardstick for assessing whether the writ should issue. Cases such as Wiggins and Williams may be pertinent to the extent that they illustrate a proper Strickland analysis, but they cannot be used to substitute for or expand the scope of Strickland.
We apply the habeas framework to Petitioner’s claims of ineffective assistance of counsel by determining, first, whether Petitioner has received a full and fair hearing of these claims. If he did not receive such a hearing, we then must consider whether there was an appropriate determination during direct review that no hearing was required into those claims. If a hearing into the factual basis for Petitioner’s claims was required, Petitioner now is entitled to a full and fair hearing of those claims.
During the sentencing proceeding at trial, defense counsel presented testimony from members of Petitioner’s family, individuals from the community in which he was raised, officials from the detention facility, and a fellow servicemember. The sentencing testimony addressed the negative environment in Petitioner’s family, violence in the community during his formative years, and other mitigating factors. As noted in the lead opinion, appellate defense counsel have submitted post-trial affidavits from members of Petitioner’s family and others containing substantial details not presented at trial. These affidavits paint a much more graphic picture of Petitioner’s background than the testimony presented at trial, including detailed information concerning Petitioner’s childhood alcohol and drug abuse, the systematic physical violence family members inflicted on Petitioner, family rejection of Petitioner, including knowledge that his mother wanted to preclude his birth through an abortion, and violence in the community directed at the family in general and Petitioner in particular, including the use of firearms against Petitioner.
At trial, the prosecution’s closing argument on sentencing emphasized that the defense had presented little information that would connect the home and community environment to any effect on Petitioner. The detailed information reflected in the affidavits of potential witnesses submitted on appeal, if sufficiently reliable for presentation at trial, might well have provided the necessary link.
This Court does not have factfinding powers. As a result, we were not in a position during direct review of Petitioner’s conviction to evaluate appellate defense counsel’s contention that the information was both reliable and outcome determinative. Likewise, without factfinding powers, we were not in a position during direct review to evaluate the Government’s contention that the affidavits from defense counsel provided a conclusive basis for determining that counsel were not ineffective; nor were we in a position to determine that the information in the affidavits from others would not have had a significant effect during the sentencing process.
Given the important mixed questions of fact and law raised by the post-trial affidavits, a hearing should have been ordered on direct review under the then-current standards set forth in Wean and Perez. See section H.B.4., supra. Moreover, as set *161 forth in the lead opinion, a hearing is required at the present time under Ginn.
During habeas hearings at both the state and federal level, factfinding courts evaluate the reliability and impact of the type of information submitted by appellate defense counsel in the present case. In the military justice system, a similar evaluation may be made in a DuBay hearing that receives testimony from potential witnesses as to what they would say at trial and from defense counsel concerning both their investigation and trial strategies. Such a hearing can identify: (1) the specific sources of mitigation or rebuttal information omitted or incompletely presented at trial; (2) whether such omitted or incomplete sources of information should have been identified in an investigation by or under the direction of a competent attorney under Strickland; (3) whether such information, if properly investigated, would have provided a significant addition to the information available for presentation at trial; (4) whether the availability of such information reasonably could have led counsel to change trial tactics in specific respects; (5) whether any such change in trial tactics might have had an impact on the trial outcome; and (6) whether, in light of such impact, any deficiency of counsel resulted in prejudicial error under Strickland. The questions set forth in the lead opinion provide the appropriate framework for a hearing on these issues.
B. THE RING CLAIM
Under the standards set forth in section II.B.l., supra, I agree with the lead opinion that Petitioner is not entitled to relief under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). See Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).