David **HUANG**, M.D., Ph.D., Plaintiff,

v.

**SECRETARY OF THE ARMY, Defendant.**

**No. 1:98–CV–1800–CAM.**

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 5, 1998.

Myles Eric Eastwood, Office of Myles E. Eastwood, Atlanta, GA, for David Huang, Ph.D., plaintiff.

Patricia Rebecca Stout, Office of United States Attorney, Northern District of Georgia, Atlanta, GA, for Secretary of the Army, defendant.

## ORDER

MOYE, District Judge.

The two issues before the Court in this case are (1) whether the Army may revoke an honorable discharge validly issued and delivered by competent military authority because of "obvious error" on the Army's part untainted by any fraud or deception on the part of the discharged reserve officer, and (2) whether that question must initially be tried before a military tribunal rather than a civilian court. While jurisdictional questions generally should be decided initially and before considering the merits, in this case the two issues are so completely interdependent that the jurisdictional issue cannot be decided without deciding the merits. That is so because jurisdiction depends upon status, civilian or military, and that question goes to the merits.

The case is before this Court after final hearing on plaintiff's complaint for injunction. The Court, after issuing a temporary restraining order preventing the Army from exercising military jurisdiction over the plaintiff, consolidated the request for preliminary injunction with the request for permanent injunction by consent of the parties. The temporary restraining order has remained in effect pending this final order. The Court now sets forth its findings of fact and conclusions of law in opinion form.

## BACKGROUND

The plaintiff, while an undergraduate student at Massachusetts Institute of Technology, enrolled in the Army Reserve Officer Training Corps. Plaintiff was *never* in a scholarship status, and received no financial assistance from the military either there or while subsequently enrolled at Harvard Medical School despite the notation on plaintiff's Army personnel record, page 000001 of the certified record filed in this Court by defendant. Plaintiff, however, for each year in medical school and each year in his subsequent internship, and residency and through 1996 applied for and the Army granted delays of entry into active duty. As counsel for the Army pointed out at the hearing, it was to the Army's advantage to grant the delays as the increasingly higher education plaintiff received during each delay made him a more valuable property.

On December 5, 1996, the Army, by competent authority, honorably discharged the plaintiff, "DAVID HUANG 446–72–8511 1LT DL USAR" from the United States Army. Certified Record, 000006. An order accompanying the discharge certificate stated, in part (Certified Record, 000007), "You are discharged from the unit shown. Authority: AR 135–175. Effective date: 05 Dec 96. Component: United States Army Reserve". No reason for the discharge was stated on the certificate. The accompanying order, dated December 5, 1996, also stated, in part: "You are discharged from the component shown. * * *United States Army Reserve. * * * As *you no longer have any military status,* your records are no longer held by the Army."( Italics added).

On the date of his discharge plaintiff knew he was a captain in the Medical Corps, and not a 1st lieutenant. Plaintiff inquired why he was being discharged, signing his inquiry "Cpt. MC." (Certified Record p. 000005). The Army then learned that the discharge certificate was issued because his service data had not been updated on the Reserve Data Management System (RDMS), the Army's computerized personnel data management system, to reflect his appointment to the Medical Corps in the rank of captain. See memorandum from Carol Shelton, Lead Military Personnel Staff Technician, to Chief, Eligibility and Control Branch (Certified Record 000004):

"1. Officer was erroneously discharged because RDMS did not reflect the proper rank of Captain and date of rank of 10 Jun 93. Request memorandum be issued to

Transition Branch approving revocation of enclosed discharge order number D–12–603223, dated 5 Dec 96. * * *

"2. Also request RDMS be updated to reflect the rank of Captain with date of rank as 10 Jun 93 IAW enclosed appointment letter dated 10 Jun 93 and DA Form 71 dtd 10 Jun 93."

The discharge order was then purportedly voided or rescinded on February 12, 1998, over two months after the issuance and receipt of plaintiff's discharge certificate (Certified Record 000003), by the same officer who had issued the discharge certificate. The authority for voiding the order was stated to be AR 135–175, the same regulation upon which the discharge itself was based. Army Regulation 135–175 is not a single discrete regulation, but has numerous paragraphs and provisions under the general subject matter "Separation of Officers". See exhibit 7 to Defendant's Supplemental Brief. Ms. Nancy A. O'Leary, a Military Personnel Technician, by affidavit, stated:

"Dr. Huang was issued discharge orders because his records reflected he was passed over promotion to Captain on the Army Promotion List (APL) as an infantry officer. However, at the time the orders were issued, this section was unaware that he had been reappointed in the Medical Corps with the rank of Captain since this was not reflected in the records. The orders were erroneous because there was no reason to discharge Dr. Huang. It was an administrative error."

Defendant then asserts that Dr. Huang was fully qualified for appointment in the Medical Corps, a proposition with which plaintiff obviously does not disagree, and "any previous nonselections were ineffective".

The plaintiff claims that upon receipt of the discharge certificate he became a civilian, no longer subject to military authority or military tribunals.

## LEGAL DISCUSSION

In *U.S. v. Private William Banner, Junior.*, 1956 WL 4820(ABR), 22 CMR 510, the U.S. Army Board of Review held (22 CMR at 514,):

A discharge becomes effective when it is ordered by competent authority and the dischargee receives either actual or constructive notice of it. The first question in this case is whether the accused's discharge was ordered by competent authority. It is a well established rule, often expressed in the opinions of the Judge Advocate General, that a mistake of fact on the part of the Army does not vitiate a purported discharge, even though the mistaken fact was necessary to the authority of the discharging officer to order the discharge. This subject was exhaustively considered in JAGA 1953/7621, 5 October 1953, in which it was stated:

"...It may therefore be concluded that the correct rule is that even an official with limited discharge authority, if purporting to act within the limits of the authority granted him, may (in the absence of fraud) validly effect an irrevocable discharge although he has been acting under a mistake of fact."

While defendant has argued that Army Regulation AR 135–175 contains no authority for discharging plaintiff under the circumstances of this case, and that it was merely an error on the part of some subordinate Army personnel, it has not challenged Colonel Brinsly's authority to issue the discharge certificate itself, or its actual receipt by plaintiff. It is therefore clear, under the Army's own unchallenged precedents, that plaintiff was irrevocably discharged from the Army on December 5, 1997, even if there was some mistake or administrative error, obvious or not, in the authority to grant the discharge, and was thereafter a civilian and not a member of the Army reserve (see Certified Record, 0007). There is a long line of cases so holding even despite conflicting Army regulations, the same argument here advanced. See: *Hirshberg v. Cooke*, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 (1949); *U.S. v. Scott*, 1960 WL 4532, 29 C.M.R. 462, 462–463, 11 USCMA 646 (1960); *U.S.v. Howard*, 20 M.J. 353 (1985).

Defendant, however, at argument called the court's attention to Army Regulation 600–8–105, § 2–21(e), which provides:

e. When there is no evidence of fraud or obvious error and the soldier received actual or constructive delivery, orders dis-

charging a soldier from the service will not be revoked after the effective date of the discharge unless the revocation is a written confirmation of verbal orders actually issued before the effective date of the discharge.

The Army does not claim there is any verbal order revoking the discharge before its effective date, and thus appears to be relying upon the negative language of the regulation as the grant of an affirmative right to correct an obvious error by revoking a discharge. The plaintiff points out, however, that AR 600-8-105 is a general regulation, and AR 135-175, the regulation upon which the Army actually relied (Certified Record 0007), deals specifically with the separation of officers in the Army National Guard and Army Reserve, of the latter of which plaintiff was member. The comparable section, AR 135-175, section 1-10b, provides only:

b. A discharge order may not be revoked after its effective date, provided-

(1) The order was published from a headquarters authorized to approve the discharge and to issue a discharge certificate (para 2-8).

(2) There is no evidence that the discharge certificate was obtained under fraudulent circumstances.

(3) The officer received actual or constructive notice of the discharge.

AR 135-175, dealing specifically with reserve officers has no provision even indirectly authorizing revocation of discharge for "obvious error." In statutory construction, the specific will prevail over the general. It should be noted also that AR 135-175 conforms to the Army's own long established rule that the certificate of discharge is valid and effective even if in conflict with an Army regulation.

The Army argues, however, that since its regulations are involved, an Army tribunal should first consider plaintiff's case before a federal civilian court assumes jurisdiction, i.e. exhaust his administrative remedies, citing *Linfors v. U.S.*, 673 F.2d 332 (11th Cir.1982), which, in turn, had cited *Mindes v. Seaman*, 453 F.2d 197 ( 5th Cir.1971) for the proposition (673 F.2d at 334):

"[A] court should not review internal military affairs in the absence of (a) an allega-

tion of a deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, *and* (b) exhaustion of available intraservice corrective measures."

The quotation above is sufficient to distinguish *Linfors* and *Mindes*. This case does not involve *internal military affairs,* it involves the power of the military to reach out and pull a civilian into the military system, and thus substantially involves basic constitutional and statutory rights. The correct rule in this situation, this Court believes, is that due deference should be given to an agency's interpretation of its own regulations, and this the Court has attempted to do in this order.

The regulation upon which the defendant relied at argument is AR 600-8-105, § 2-21(e) quoted above. The Army's power to issue that regulation stems from its initial authorization by the Congress. Constitution, Article I, Sec. 8: "To make Rules for the Government and Regulation of the land and naval Forces;...", and the specific authorization, 10 U.S.C. 121: "The President may prescribe regulations to carry out his functions, powers and duties under this title", i.e. as Commander in Chief of the Armed Forces. The specific regulation was prescribed pursuant to the order of the Secretary of the Army. As noted above, the regulation is a positive statement that a discharge *will not be revoked* unless it is merely a written confirmation of an order issued before the effective date of the discharge absent "evidence of fraud or obvious error."

 10 U.S.C. 803, a section of the Uniform Code of Military Justice, specifically provides that "Each person discharged from the armed forces who is later charged with having fraudulently obtained his discharge is [subject to the applicable statute of limitations] subject to trial by court martial on that charge and is after apprehension subject to this chapter while in custody of the armed forces for that trial." While that specific authorization may support an affirmative power to revoke a discharge where fraud is alleged, it is absolutely clear that there is no claim of any evidence of fraud in the procurement of the discharge before the Court. The

Court specifically inquired of counsel whether there is any legislative history indicating that the Army has the authority to revoke a discharge for alleged obvious error on its own part, as distinguished from fraud on the part of the dischargee, and received a negative reply. Long-standing, prior unchallenged precedent of the Army's own tribunals that a mistake of fact on the part of the Army does not vitiate a purported discharge, *U.S. v. Private William Banner, supra,* may not be lightly overturned *sub silentio.* The plaintiff, a civilian, and without any military status according to the Army itself, has thus raised substantial questions based on the legal construction of the Constitution, Acts of Congress, and the Army's own regulations and precedents whether the Army has the right to require him to resort to military tribunals, or *quasi* tribunals, to determine whether he is subject to military law and control. In this circumstance, the court holds that prior exhaustion of military remedies is not required. In *Noyd v. Bond,* 395 U.S. 683, 696, fn. 8, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969), a *habeas corpus* case from a military prison where exhaustion was required, the court noted:

> "8.Petitioner contends that our decisions in *Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955); *Reid v. Covert,* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148; and *McElroy v. Guagliardo,* 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960), justify his position that exhaustion of military remedies is not required in this case. The cited cases held that the Constitution barred the assertion of court-martial jurisdiction over various classes of civilians connected with the military, and it is true that this Court there vindicated complainants' claims without requiring exhaustion of military remedies. *We did so, however, because we did not believe that the expertise of military courts extended to the consideration of constitutional claims of the type presented. Moreover, it appeared especially unfair to require exhaustion of military remedies when the complainants raised substantial arguments denying the right of the military to try them at all.\* \* \*"* (textual italics added).

In *Schlesinger v. Councilman,* 420 U.S. 738, 758–759, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975),a case involving the conviction by Army court-martial of a captain *on active duty* on charges involving the sale, transfer and possession of marihuana, Mr. Justice Powell stated:

> "We hold that when *a serviceman* charged with crimes by military authorities can show no harm other than that attendant upon the resolution of his case in the military court system, the federal district courts must refrain from intervention by way of injunction or otherwise."

Respondent seeks to avoid this result by pointing to the several military habeas cases in which this Court has not required exhaustion of remedies in the military system before allowing collateral relief. [citations omitted]. In those cases, the habeas petitioners were *civilians* [ italics in original] who contended that Congress had no Constitutional power to subject them to the jurisdiction of courts-martial. The issue presented concerned not only the military court's jurisdiction, but also *whether under Art. I Congress could allow the military to interfere with the liberty of civilians even for the limited purpose of forcing them to answer to the military justice system.* In each of these cases, the disruption caused to petitioners' civilian lives and the accompanying deprivation of liberty made it especially unfair to require exhaustion...when the complainants' raised substantial arguments denying the right of the military to try them at all. *Noyd v. Bond, supra,* at 696 n. 8, 89 S.Ct. 1876. *The constitutional question presented turned on the status of the persons as to whom the military asserted its power.* As the Court noted in *Noyd,* it "did not believe that the expertise of the military courts extended to the consideration of constitutional claims of the type presented." ( Italics supplied except as noted).

Mr. Justice Powell went on to assume, *arguendo,* that even "absent incarceration, or other deprivation of liberty federal court intervention would be appropriate in cases like *Toth* and its progeny despite failure to exhaust military remedies" while pointing out that the case then before the court did not meet those criteria. The Army has here attempted to distinguish cases such as *Toth,*

by arguing that they were *habeas corpus* cases, and this is not. The Court finds that distinction without merit. Central to those cases and this also is the status of the petitioner, military or civilian. *Schlesinger v. Councilman, supra.* The Army has no more authority to require a civilian to report for duty, or to be excused therefrom only by an Army tribunal, than it has to try civilians in courts martial.

The defendant's contention at page 13 of its Supplemental Brief that "This complaint must be dismissed since it is clear that the type of military determination involved here, *i.e.* whether the plaintiff is a member of the United States Army, is not reviewable" is not supported by precedent. It is patently contrary to the several cases cited herein wherein that very determination was critical, cases where exhaustion of administrative remedies was not required under Supreme Court precedent. The defendant is correct that federal courts have been very reluctant to interfere with the military's exercise of discretion in internal military matters (*id.*), but where the issue is whether one who claims to be civilian is subject to military control, the issue does not involve discretion at all and is and ought to be reserved to the civilian courts. Consider an interesting hypothetical case. Had plaintiff not alerted the defendant, and the Army caught its own "obvious" error five or six years later, could the Army unilaterally then revoke the discharge certificate and recapture the plaintiff? Civilian control of the military, and particularly of the dividing line between the two, is firmly established and is a bedrock principle that must not be allowed to be eroded.

In seeking to have the court require prior exhaustion of administrative remedies, the Army contends that the Army Board for Correction of Military Records (ABCMR), 10 U.S.C. § 1552, is the appropriate administrative tribunal (Supplemental Brief, pp. 8–9, and see fn8, p. 9). In support of that position, the Army has submitted the declaration of Loren G. Harrell, Director of the Army Board for Correction of Military Records, to

the effect that, if plaintiff has not applied to that Board for relief, and, should he do so, the Board could recommend that the Secretary of the Army grant relief. How this would be accomplished is not spelled out. It has not suggested what record needs to be changed.

Initially however it should be pointed out that this contention admits the plaintiff's valid and irrevocable discharge and civilian status, which itself is the basic issue before this Court. In *Sims v. Fox,* 492 F.2d 1088, 1094 (5th Cir.1974), in a case brought by a discharged serviceman apparently seeking expungement of unfavorable material from his honorable discharge, Judge Tuttle stated:

> Finally, the appellees contend that the trial court did not have jurisdiction of this matter because of the failure of Lt. Sims to pursue available administrative remedies. In its brief filed in this court the government's position is far from clear. It states:
>
> > "Plaintiff has not exhausted his administrative remedies. He has further administrative appeals under 10 U.S.C. § 1552 (32 CFR 865A) and U.S.C. § 1553(32 CFR 865 B)."

It is apparent that *neither* of these forms of administrative hearings would be available to Lt. Sims until *after his discharge had been completed and his separation both as an active and as a reserve officer had become final.* The sections were *both* enacted initially for the purpose of avoiding a large number of "private" bills in Congress by which formerly discharged service men sought to have the nature or character or type of discharge certificate corrected because of real or imaginary defects in the military system which they felt had prejudiced them.[1] ( Italics supplied).

It must be kept in mind that plaintiff does not here contest the validity or terms of his discharge certificate ( although he may later seek to have the "1 LT" changed to a "CAP" or "MAJ") and possibly what the Army has in mind is an expungement of the order purporting to void the discharge (Certified

---

1. *En Banc* rehearing was granted, 492 F.2d 1088, and, upon rehearing, the decision of the trial court affirmed, the panel having reversed and remanded, because of an intervening change in army regulations (505 F.2d 857, 860), and

because the *en banc* court, disagreeing with the panel, found plaintiff to have no "property right" in continued employment in the Air Force, or a liberty interest in his good name, etc. (505 F.2d at 862).

Record 000003). But the Board could only (1) recommend expungement of the order, or (2) do nothing. It has no power to do anything affirmative other than suggest to the Secretary of the Army that, *as a matter of grace,* the revocation order should be expunged. *Doyle v. U.S.,* 220 Ct.Cl. 285, 599 F.2d 984, 1000 (Ct.Cl.1979): "It is clear that the statute [10 U.S.C.1052] only confers on the Secretary the power to correct records in favor of a serviceman and never against him." If it did not so recommend, and the Secretary so act, the matter would be left for resolution by this Court-the Army having suggested no other appropriate tribunal.

The Board would be bound by the pronouncements of highest judicial authority of the military just as it is bound by the enabling statute and regulations. *Owings v. Secretary of Air Force,* 298 F.Supp. 849, 855 (D.D.C.1969). As shown above, the military's own highest tribunals are unanimous that under the circumstances of the case, plaintiff has received a valid, irrevocable discharge. The Board could not legally ignore that authority.

While defendant has pointed to the contractual nature of plaintiff's obligations, it is clear that whatever obligations there were, they were terminable at the discretion of the Army. The Army has not argued this as a contract case, and as held in the *en banc* opinion in *Sims v. Fox,* fn. 1, p. 1089, there is here no such mutuality of obligations as in a true contract.

While it is tempting simply to stay this matter for exhaustion of administrative remedies, which in the opinion of this Court legally could have only one outcome, in view of the importance of the issue here presented involving the Constitutional border line between civilian and military authority, the Court believes a stay for administrative action is not justified either in principle or on the basis of judicial economy.

## CONCLUSIONS

The Court therefore holds first that exhaustion of military remedies is not required in this case.

The Court next finds that plaintiff received a valid and irrevocable discharge restoring him completely to civilian status without any military status at all.

The Court further finds the Army was without authority to revoke its valid and irrevocable discharge of plaintiff so as to recapture for the Army a civilian who previously had been validly discharged as a result of the Army's own "obvious error" without any admixture of fraud on plaintiff's part.

The temporary restraining order heretofore entered is made permanent, and the Army is now permanently enjoined from exercising military authority over plaintiff, a civilian.

Defendant's motions to dismiss or for summary judgment are denied as moot in view of this order.

The Clerk is directed to close this case.