# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CONN, HOFFMAN, and GIFFORD
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain SONYA M. WATSON**
**United States Army, Appellant**

ARMY 20080175

United States Military District of Washington
Theresa A. Gallagher, Military Judge
Colonel William T. Barto, Staff Judge Advocate

For Appellant:  Colonel Mark Tellitocci, JA; Lieutenant Colonel Matthew M. Miller, JA; Major Bradley Voorhees, JA; Captain Tiffany K. Dewell, JA (on pleadings following argument); Captain Tiffany K. Dewell, JA (argued); Colonel Mark Tellitocci, JA; Lieutenant Colonel Matthew M. Miller, JA; Major Bradley Voorhees, JA; Captain Tiffany K. Dewell, JA (on brief in response to specified issue); Colonel Mark Tellitocci, JA; Lieutenant Colonel Matthew M. Miller, JA; Major Bradley Voorhees, JA; Captain Adam K. Mellor, JA (on brief).

For Appellee:  Colonel Norman F. J. Allen, III, JA; Lieutenant Colonel Martha L. Foss, JA; Major Sara M. Root, JA; Captain Sarah J. Rykowski, JA (on pleadings following argument); Captain Sarah J. Rykowski, JA (argued); Lieutenant Colonel Martha L. Foss, JA; Major Sara M. Root, JA; Captain Sarah J. Rykowski, JA (on brief in response to specified issue); Colonel Norman F. J. Allen, III, JA; Lieutenant Colonel Martha L. Foss, JA; Major Sara M. Root, JA; Captain Sarah J. Rykowski, JA (on brief).

12 March 2010

---------------------------------------
OPINION OF THE COURT
---------------------------------------

CONN, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to her pleas, of larceny of government property and fraud against the United States (two specifications), in violation of Articles 121 and 132, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 932 [hereinafter UCMJ].  The military judge sentenced appellant to a dismissal, confinement for seven months, a fine of $135,000, and forfeiture of all pay and allowances.  Pursuant to the pretrial

agreement, the convening authority approved the dismissal, a fine of $100,000 and forfeiture of all pay and allowances. This case is before the court for review pursuant to Article 66, UCMJ.

Prior to convening authority action, appellant, a reserve officer, was released from active duty (REFRAD). While pending appellate review, appellant received orders placing her in an inactive status. After convening authority action approving her dismissal, she received discharge orders and an honorable discharge certificate. Appellant argues that her honorable discharge, prior to execution of her adjudged and approved dismissal, remits the dismissal and renders it a nullity. The government argues appellant's discharge was issued in violation of applicable regulations, because the discharge authority failed to consider appellant's court-martial conviction and punitive discharge prior to taking action; thus, later action voiding appellant's honorable discharge was proper.

As our court's recent opinions reflect, when a soldier pending punitive discharge receives an administrative discharge, contrary to regulation, the discharge may be either void or voidable, depending on the explicit terms of the regulation involved. In this case, we find appellant's administrative discharge was issued contrary to regulation. While the applicable regulation did not render appellant's discharge void, the proper authority took action voiding appellant's erroneous administrative discharge. Therefore, appellant's erroneous administrative discharge does not act to remit appellant's approved punitive discharge.

## BACKGROUND

Appellant was a reserve officer on active duty pursuant to successive orders from 10 April 2004 until 8 April 2008. On 19 February 2008, appellant was convicted, pursuant to her pleas, of larceny and fraud against the United States involving over $128,000 in fraudulent lodging and per diem claims.

*Trial to Initial Action*

Appellant was sentenced to seven months confinement. Her pretrial agreement provided for the suspension and disapproval of all confinement conditioned on her payment of any adjudged fine of up to $100,000 prior to action. On 4 April 2008, appellant paid the $100,000 fine. On that same day, appellant received orders releasing her from active duty (REFRAD) effective 8 April 2008, the date her active duty orders expired. Appellant also received a Department of Defense, Form 214, Certificate of Release or Discharge from Active Duty (Feb. 2000) [hereinafter DD Form 214] releasing her from active duty, which she signed. The DD Form 214 annotated its reason for issuance as REFRAD.

On 28 April 2008, appellant submitted her Rule for Courts-Martial [hereinafter R.C.M.] 1105 clemency matters, requesting disapproval of her dismissal or the "opportunity" to resign her commission. Appellant did not include a resignation request with her submission.

On 2 May 2008, the convening authority took action, approving appellant's dismissal and other punishments in accordance with her pretrial agreement and, except the dismissal, ordering them executed.

*Administrative Discharge Pending Appellate Review*

On 23 June 2008, appellant received notice that she had completed her military service obligation (MSO). The notice advised her if she did not affirmatively request to remain in the Individual Ready Reserve (IRR), she would be discharged in accordance with Department of Defense Directive (DoDD) 1235.13.[1] Appellant did not request to remain in the IRR.

In August 2008, appellant received orders placing her on inactive status (standby reserve) and on 5 December 2008, appellant received discharge orders issued under authority of Army Regulation [hereinafter AR] 135-175, Army National Guard and Army Reserve Separation of Officers (28 February 1987),[2] signed by the commander, HRC, St. Louis, along with a Department of Defense Form 256A (Honorable Discharge Certificate) (May 2000) [hereinafter DD Form 256A]. There was no evidence presented as to whether appellant's records had been flagged incident to her court-martial.[3]

---

[1] Department of Defense Directive 1235.13, para. 4.5, requires automatic discharge of all reserve officers who complete their MSO within two years, unless the officer affirmatively elects to remain in the IRR.

[2] Army Regulation 135-175, para. 4-5, also provides for the discharge of any reserve officer, such as appellant, who has completed her military service obligation but has not transferred to active status or the Retired Reserve.

[3] Although not necessary for resolution of the issue before us, appellant's charge sheet acted as a "flag" pursuant to both AR 27-10, Legal Services: Military Justice, para. 5-16(b) (16 Nov. 2005), and AR 600-8-2, Personnel—General: Suspension of Favorable Personnel Actions (Flags), para. 1-12.*a*(2) (23 Dec. 2004). The legal effect of a flag is to preclude various favorable actions, including a discharge. *See* AR 600-8-2, para. 1-14.*g*. Army Regulation 600-8-2, para. 1-12, notes, however, that the flag imposed by a court-martial is non-transferrable. Thus, the flag would not have followed appellant once she was reassigned pursuant to her REFRAD. Additionally, the flagging regulation requires removal of the flag "upon the completion of punishment." AR 600-8-2, para. 1-12.*a*(2).

WATSON – ARMY 20080175

*Filings With This Court*

On 29 January 2009, appellant filed her brief with this court asserting her 5 December 2008 discharge remitted her pending dismissal. On 22 June 2009, Military Personnel Division, Fort Belvoir, issued orders revoking appellant's April 2008 REFRAD. On 12 August 2009, the commander, HRC, St. Louis, revoked appellant's 5 December 2008 discharge under authority of AR 135-175. On 27 August 2009, government appellate counsel filed her brief asserting appellant's discharge was both prohibited by regulation and had been affirmatively voided.

This court specified several issues in light of our recent opinions in *United States v. Estrada*, 68 M.J. 548 (Army Ct. Crim. App. 2009) and *United States v. McPherson*, 68 M.J. 526 (Army Ct. Crim. App. 2009). Additionally, we ordered government counsel to obtain an affidavit from the commander, HRC, St. Louis, clarifying the intent of the discharge authority when acting on appellant's discharge and the specific authority under which action was taken.

**LAW**

Generally, for a soldier to be effectively discharged or released from active duty, "there must be: (1) a delivery of a valid discharge certificate; (2) a final accounting of pay; and (3) the undergoing of a 'clearing' process as required under appropriate service regulations to separate the member from military service." *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006) (quoting and citing *United States v. King*, 27 M.J. 327, 329 (C.M.A. 1989)). Despite her administrative discharge, we retain jurisdiction to review appellant's case. *United States v. Davis*, 63 M.J. 171, 176-77 (C.A.A.F. 2006). This includes the ability to review whether appellant was validly discharged in accordance with regulation, and if not, whether that discharge was appropriately voided.

This case deals with the apparently unintended act of administratively and honorably discharging a soldier pending an adjudged punitive discharge. In two recent cases, our court has addressed how the precise language of Army regulations impact the validity of administrative discharges issued to soldiers in such cases. We found that a pending punitive discharge was unaffected where a regulatory provision by its terms made an administrative discharge in such cases inherently void (i.e., void without need to act to affirmatively void the discharge). In cases where regulations prohibited—but did not explicitly void—an administrative discharge, we held an administrative discharge of a soldier pending punitive discharge may be voidable, but it had the effect of remitting a punitive discharge absent proof action had been taken to affirmatively void the administrative discharge. These cases draw the important distinction that a regulation may prohibit a discharge, but unless the regulation by its terms also voids the discharge, it is, at most, voidable.

4

In *United States v. Estrada*, 68 M.J. 548 (Army Ct. Crim. App. 2009), *pet. granted*, __ M.J. __ (Jan. 21, 2010), our court held an administrative discharge issued to an enlisted soldier pending a punitive discharge *before* convening authority action on sentence is automatically void and does not remit a punitive discharge. That opinion was based on the precise language of AR 27-10, para. 5-16.*b*, which states, in part, following preferral of court-martial charges, "any issuance of a discharge certificate is void until the charge is dismissed or the convening authority takes initial action."

In *United States v. McPherson*, 68 M.J. 526 (Army Ct. Crim. App. 2009), *aff'd*, __ M.J. __ (Dec. 16, 2009) (summary disposition), our court addressed the validity of an administrative discharge of an enlisted soldier issued *after* convening authority action approving a punitive discharge. *McPherson* held neither AR 27-10 nor any other applicable Army regulation by its terms automatically voided such a discharge. *Id.* at 529-30. In *McPherson*, the government took no action to revoke existing discharge orders. Thus, the issue of whether the government may affirmatively revoke such administrative discharges, which are prohibited (i.e., voidable) but not void (i.e., void *ab initio*) by regulation was left open. *Id.* at 530.

In the present case, we address the issue of whether an administrative discharge of an officer *after* convening authority action on sentence is void or voidable. We further address, if voidable, whether the Army acted properly to void the administrative discharge, thereby permitting execution of appellant's court-martial dismissal.[4]

Our superior court has previously addressed the effect of an administrative discharge on courts-martial. In *Smith v. Vanderbush*, 47 M.J. 56, 57 (C.A.A.F. 1997), the court found an administrative discharge of a soldier issued prior to trial precluded court-martial. The court largely based its decision on the government's failure to present evidence of legal authority making administrative discharges of soldiers pending court-martial either void or voidable. *Id.* at 58, 60-61. In *Steele v. Van Riper*, 50 M.J. 89 (C.A.A.F. 1999), the court found an administrative discharge of a marine, sentenced to a punitive discharge, after trial but before action remitted the punitive discharge. The court based its ruling in large part on the concession of the government that appellant was entitled to his honorable discharge. *Id.* at 91. The *Steele* court noted,

> The potential conflict between administrative and judicial procedures—and the difficult jurisdictional issues raised thereby—could be substantially reduced, if not eliminated,

---

[4] This is consistent with R.C.M. 1113(c)(2). A dismissal of a commissioned officer may be approved and ordered executed only by the Secretary concerned or such Under Secretary or Assistant Secretary as the Secretary concerned may designate.

> through appropriate direction (e.g., by the President in the
> Manual for Courts-Martial) that the authority to
> administratively discharge persons with adjudged but
> unexecuted punitive discharges be restricted to senior
> officials (e.g., the Secretaries of the Military
> Departments).

*Id*. at 91 n.1. In her concurring opinion, former Chief Judge Crawford suggested the President amend regulations to prevent similar scenarios from occurring in the future. *Id*. at 92.

In *Estrada*, we found AR 27-10 prevents such conflict prior to initial action by making such discharges void *ab initio*. 68 M.J. at 550. In *McPherson*, the government presented evidence that regulation prohibited the administrative discharge of enlisted soldiers sentenced to a punitive discharge pending appellate review. The government, however, failed to present evidence the discharge after convening authority action was void or had been revoked. *Id.* at 530. Principles of statutory and regulatory construction and the rule of lenity guided our decision that those regulations nonetheless did not automatically void such administrative discharges. *Id.* Our decision in *McPherson* was significantly influenced by the government's failure to revoke or make void the administrative discharge in issue, which the government left in place while urging its regulatory invalidity. *Id.*

## DISCUSSION

Because of appellant's reserve officer status, active duty service, and REFRAD,[5] two regulations potentially control her administrative discharge: AR 600-8-24, Personnel-General: Officer Transfers and Discharges (12 April 2006) and AR 135-175, Army National Guard and Army Reserve Separation of Officers (28 February 1987).

Appellant argues in response to our specified issue, and we agree, her REFRAD is not a discharge; instead, as the term implies, it is merely a release from active duty. A REFRAD is contemplated and authorized by AR 600-8-24, paras. 1-18 and 2-31.*b*, for reserve officers not confined and pending appellate review of a

---

[5] As part of her REFRAD action, appellant was erroneously issued a DD Form 214. *See* AR 600-8-24, para. 2-31.*e* (DD Form 214 will not be prepared for REFRAD when soldier is pending appellate review). Issuance of a DD Form 214, however, does not discharge a soldier. *See King*, 27 M.J. at 329. Further, appellant's DD Form 214 at block 23 specifically noted its purpose was REFRAD, not discharge or termination of service.

court-martial dismissal.[6] That regulation, however, specifically prohibits discharge of officers pending appellate review of a dismissal except by the commanding general, HRC. AR 600-8-24, para. 1-18. The government argues, and we agree, if appellant were subject to AR 600-8-24 at the time of her discharge, the issuance of a discharge by the commander, HRC, St. Louis (the reserve element of HRC), rather than the commanding general, HRC (responsible for both active and reserve personnel) would not be authorized by AR 600-8-24, rendering the discharge unauthorized and therefore voidable.

However, appellant argues her REFRAD precludes application of AR 600-8-24, because by its terms that regulation is applicable only to officers "on active duty for 30 days or more." AR 600-8-24, para. 1-1. Since appellant's REFRAD in April of 2008 released her from active duty, appellant argues her discharge in December 2008 is controlled by AR 135-175, which governs discharge of reserve officers not on active duty. We, therefore, also analyze the legitimacy of appellant's discharge under that regulation.

It appears, based on the notices appellant received in 2007 and 2008, appellant's December 2008 discharge was predicated on the provision of AR 135-175, which directs discharge for officers who fail affirmatively to request to remain in the IRR upon completion of their service obligation.[7] Army Regulation 135-175, para. 1-3.*a*(4), however, prohibits any administrative discharge of an officer pending appellate review of a court-martial dismissal by anyone other than the Secretary of the Army, "*unless the discharge authority intends the discharge to act as a remission of the conviction.*" (emphasis added).

The government urges us to read specific phrasing of AR 135-175, para. 1-3.*a*(4), to limit discharge authority to the Secretary of the Army in cases involving officers pending appellate review of a court-martial dismissal. Analysis requires a careful reading of AR 135-175, para. 1-3.*a*, recited below:

> *a.* Reserve component officers will be separated only by—
>
> (1) The Secretary of the Army.
>
> (2) Commanders specified in this regulation under conditions set forth in this and other pertinent regulations.

---

[6] Army Regulation 600-8-24, para. 1-18, alternatively authorizes reserve officers to be placed on involuntary leave pending appellate review, as does para. 5-17.

[7] *See* AR 135-175, para. 4-5, and *supra* note 2.

(3)  Commanders specified in special directives of the Secretary of the Army under the conditions in these directives.

(4)  In relation to (2) and (3) above, the discharge authority delegated to commanders by this regulation will not include authority to discharge an officer under a court-martial sentence to dismissal, prior to completion of appellate review, *unless the discharge authority intends the discharge to act as a remission of the conviction*.

(emphasis added).

Having carefully considered this provision, we conclude the commander, HRC, St. Louis (a commander specified in AR 135-175 to direct discharge of officers in para 1-3.*a*(2)[8]), has limited authority to discharge an officer under a court-martial sentence to dismissal prior to completion of appellate review.[9]  That authority may be exercised when the discharge is intended "to act as a remission of the conviction."

---

[8] Army Regulation 135-175, para. 4-2, designates the commander, HRC, St. Louis, (formerly ARPERCEN), the authority to order discharges.

[9] We considered the use of the term "remit" in relation to a punitive discharge here to connote the UCMJ act of remitting a sentence.  *See* R.C.M. 1108(b) and 1112(f).  Pursuant to the Manual for Courts-Martial, only the court-martial convening authority, the Secretary of the Army, or, with delegated Secretarial authority, an Under Secretary, Assistant Secretary, Judge Advocate General, or commanding officer may remit unexecuted parts of court-martial sentences.  R.C.M. 1108(b).  It is certainly reasonable to read AR 135-175, para. 1-3, as a delegation of secretarial authority to remit court-martial sentences by discharge.  The commander, HRC St. Louis, is a commanding officer, and thus such a delegation would meet the requirements of R.C.M. 1108(b).  We do, however, consider that anomalous, because the commander, HRC, ordinarily has no UCMJ authority over officers pending dismissal, and we would assume the HRC commander would not typically second guess or overrule a GCMCA's decision on court-martial sentence, except when acting to carry out a secretarial decision to accept a resignation or discharge in lieu of court-martial.  There is no way, however, to interpret AR 135-175, para. 1-3.*a* (4), as the government argues without ignoring the last clause or reading "discharge authority" in that clause to mean exclusively the Secretary of the Army.  This is inherently illogical in context.

8

We find the commander, HRC, St. Louis, did not act with such an intention. That commander provided an affidavit to this court, stating three essential facts. First, she was not aware appellant had been court-martialed at the time she took action on appellant's discharge. Second, had she been aware appellant was pending dismissal, she would not have approved the discharge. Third, she did not intend the discharge to act as a remission of the conviction per AR 135-175, para. 1-3.*a*(4). Under these circumstances, such a discharge contravenes regulations and therefore renders appellant's discharge voidable. *McPherson,* 68 M.J. at 530.

Appellant argues her discharge was improperly voided pursuant to AR 135-175, para. 1-10.*b*. That regulatory provision provides a discharge order may not be revoked after its effective date if: (1) the order was published from a headquarters authorized to approve the discharge and issue a discharge certificate; (2) there is no evidence of fraud; and (3) the officer concerned received notice of the discharge.

In this case, we do not find affirmative evidence of fraud in appellant's discharge, and it appears appellant did receive notice of her administrative discharge. However, the crucial issue in this instance is the precise meaning of the term "headquarters authorized to approve the discharge." That interpretation is both our prerogative and responsibility under law. *United States v. Shavrnoch,* 49 M.J. 334, 338 (C.A.A.F. 1998) (significant deference is given to the Courts of Criminal Appeals in the interpretation of the regulations issued by their own departments).

We conclude the term "headquarters authorized," as used in AR 135-175, para. 1-10, means a headquarters acting in a manner not otherwise inconsistent with regulation governing its action. Further, we find that the delegated authority to the commander, HRC, St. Louis, under AR 135-175, para. 4-2, is limited by para. 1-3.*a*(4) of that regulation. By implication, para. 1-3.*a*(4) requires the discharge authority have knowledge of the court-martial conviction of the officer pending an administrative discharge. In the absence of such knowledge, there is no delegated authority. With such knowledge, the discharge authority must then intend the discharge to act as a remission of appellant's court-martial conviction. The commander, HRC, St. Louis, executed an affidavit expressly stating she was not aware appellant had been tried by court-martial and she did *not* intend the discharge to act as a remission of the conviction. As such, she lacked delegated authority to discharge appellant, an officer under a court-martial sentence to dismissal per AR 135-175, para. 1-3.*a*(4). Consequently, appellant's administrative discharge is revocable per AR 135-175, para. 1-10.*b*(1) and has been properly revoked.

We note the revocation of appellant's honorable discharge occurred after appellant filed her brief alleging this court was precluded from approving her adjudged dismissal. When faced with a writ-appeal concerning a similar issue, our superior court issued a temporary stay, ordering no action be taken which would invalidate appellant's honorable discharge pending further order of the court.

*Steele,* 50 M.J. at 91. In this case, however, appellant did not seek a stay in conjunction with her assignment of error. Further, we find no authority requiring this court to issue a stay in such circumstances. Therefore, without deciding whether this court ultimately has the authority to stay further administrative action in such circumstances, we decline to do so in appellant's case.

This court's recent trilogy of cases involving the administrative discharge of soldiers who have been adjudged punitive discharges demonstrates a systemic problem implicating a wide variety of separation regulations. These cases make obvious the need for comprehensive reform. We reiterate our court's recommendation in *Estrada* and *McPherson* and echo the recommendation of our superior court in *Steele:* the President through a Manual for Courts-Martial revision or the Army through regulatory changes, must comprehensively address the issue of administrative discharge of all soldiers pending final appellate review of an adjudged punitive discharge.

## CONCLUSION

Headquarters, HRC, St. Louis lacked authority to administratively issue appellant an honorable discharge. Thus, appellant's administrative discharge was voidable, and in this case properly voided. Because the discharge was properly voided, it does not remit or otherwise impact appellant's approved sentence to a dismissal.

On consideration of the entire record, including the assignment of error and matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the findings of guilty and the sentence are affirmed.

Judge HOFFMAN and Judge GIFFORD concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court