UNITED STATES, Appellee

v.

Sonya M. WATSON, Captain
U.S. Army, Appellant

No. 10-0468

Crim. App. No. 20080175

United States Court of Appeals for the Armed Forces

Argued December 1, 2010

Decided February 28, 2011

EFFRON, C.J., delivered the opinion of the Court, in which
ERDMANN and RYAN, JJ., joined.  STUCKY, J., filed a separate
dissenting opinion, in which BAKER, J., joined.


Counsel

For Appellant:  Captain Tiffany K. Dewell (argued); Colonel Mark
Tellitocci, Lieutenant Colonel Jonathan F. Potter, and Captain
Shay Stanford (on brief); Lieutenant Colonel Matthew M. Miller.


For Appellee:  Captain Chad M. Fisher (argued); Major
Christopher B. Burgess and Major Sara M. Root (on brief);
Lieutenant Colonel Jan E. Aldykiewicz and Captain Sarah J.
Rykowski.


Military Judge:  Theresa A. Gallagher


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Chief Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted Appellant, pursuant to her pleas, of larceny of government property and fraud against the United States, in violation of Articles 121 and 132, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921, 932 (2006).  The military judge sentenced Appellant to a dismissal, confinement for seven months, a fine of $135,000, and forfeiture of all pay and allowances.  Pursuant to a pretrial agreement, the convening authority approved the dismissal, a fine of $100,000, and forfeiture of all pay and allowances.  Subsequently, the Army placed Appellant in standby reserve status.  Shortly thereafter, the Commander, United States Army Human Resources Command (HRC Commander), administratively discharged Appellant from the Army.

During review of her court-martial by the Army Court of Criminal Appeals, Appellant contended that the administrative discharge remitted that portion of her sentence which included a punitive separation -- the dismissal.  United States v. Watson, 69 M.J. 623, 625 (A. Ct. Crim. App. 2010).  While the case was under review, the Human Resources Command issued an order revoking Appellant's administrative discharge.  Id. at 625-26. The Government then asserted before the Court of Criminal Appeals that Appellant had not received a valid administrative discharge, enabling the Army to revoke the discharge.  Id. at

624.  The Court of Criminal Appeals agreed, and affirmed the

findings and sentence, including the punitive dismissal.  Id. at

630.

On Appellant's petition, we granted review of the following

issue:

> WHETHER THE ARMY COURT ERRED WHEN IT RULED
> THAT APPELLANT'S ADMINISTRATIVE DISCHARGE
> WAS VOIDABLE AND PROPERLY REVOKED AND DID
> NOT REMIT THE ADJUDGED DISMISSAL.

For the reasons set forth below we conclude that Appellant

received a valid discharge, and reverse the decision of the

court below.

## I.  THE EFFECT OF AN ADMINISTRATIVE SEPARATION

Military service subjects members of the armed forces to

rules, orders, proceedings, and consequences different from the

rights and obligations of their civilian counterparts.  See,

e.g., Parker v. Levy, 417 U.S. 733 (1974).  In view of these

differences, we review the laws and regulations governing

enlistment and separation with sensitivity to the distinction

between military and civilian status.  See Smith v. Vanderbush,

47 M.J. 56, 59 (C.A.A.F. 1997).

A pretrial administrative discharge terminates court-

martial jurisdiction over the accused, returning him to civilian

status by virtue of the discharge.  See id.  A post-trial

administrative discharge operates to remit the unexecuted

punitive discharge portion of an adjudged court-martial sentence. Steele v. Van Riper, 50 M.J. 89, 91-92 (C.A.A.F. 1999); cf. United States v. Davis, 63 M.J. 171 (C.A.A.F. 2006) (regarding the authority for appellate review of the findings and sentence in the aftermath of a post-trial administrative discharge).

A void administrative discharge, such as one obtained by fraud, does not preclude either the exercise of court-martial jurisdiction or the approval of an unexecuted punitive discharge. See Smith, 47 M.J. at 58. Likewise, an administrative discharge that is suspended by the express terms of a regulation does not preclude approval of an unexecuted punitive discharge. United States v. Estrada, 69 M.J. 45, 48 (C.A.A.F. 2010) (concerning a regulation that treated a discharge as "void until" a subsequent act occurred).

For purposes of ascertaining the impact of an administrative discharge on court-martial proceedings, our Court has identified three generally applicable elements of a valid discharge: "'First, there must be a delivery of a valid discharge certificate . . . . Second, there must be a final accounting of pay made. . . . Third, appellant must undergo the 'clearing' process required under appropriate service regulations to separate him from military service.'" United States v. Hart, 66 M.J. 273, 276 (C.A.A.F. 2008) (quoting United

4

States v. King, 27 M.J. 327, 329 (C.M.A. 1989) (alteration in original)).  In the present appeal, only the first element is at issue -- whether the Army issued Appellant a valid discharge certificate.

## II.  THE ADMINISTRATIVE DISCHARGE ISSUED BY THE U.S. ARMY HUMAN RESOURCES COMMAND

1.  Completion of trial, release from active duty, and the convening authority's action

On February 19, 2008, at the completion of the court-martial at issue, Appellant was serving as a reservist under active duty orders for a limited period of time.  On April 4, 2008, Appellant received new orders releasing her from active duty and transferring her to a reserve command.

A month later, on May 2, 2008, the convening authority took action on the results of trial.  Consistent with the pretrial agreement, the convening authority's action stated that "only so much of the sentence as provides for forfeiture of all pay and allowances, payment to the United States of a fine of $100,000, and a dismissal is approved and, except for the part of the sentence extending to dismissal, will be executed."  Appellant paid the fine in full prior to the convening authority's action.

2.   Notice of the opportunity to remain in the Reserves

On June 23, 2008, the Army advised Appellant that she had completed her military service obligation, and offered her the opportunity to remain in the Individual Ready Reserve (IRR). In a subsequent order, dated August 6, 2008, the HRC Commander reminded Appellant of the opportunity to remain in the IRR, and stated that she would be discharged from the Army if she did not affirmatively request to stay in the IRR.  Later in August, Appellant was placed in the inactive reserve in a standby status.

3.   Appellant's discharge

On April 4, 2008, Appellant paid the approved $100,000 fine in full.  Subsequently, on December 5, 2008, the HRC Commander issued an order discharging Appellant from the United States Army Reserve with an honorable discharge.  The order cited as authority Dep't of the Army, Reg. 135-175, Army National Guard and Army Reserve, Separation of Officers (Feb. 28, 1987) [hereinafter AR Reg. 135-175] (providing in para. 4-5 for separation of any reserve officer who has completed the individual's military service obligation and has not transferred to active duty or the retired reserve); see also Dep't of Defense Dir. 1235.13, Management of the Individual Ready Reserve (IRR) and the Inactive National Guard (ING) (July 16, 2005) (establishing a mandatory discharge policy for individuals in

the IRR who completed service obligations and who did not affirmatively request to remain in the IRR). The Army issued Appellant an "Honorable Discharge" certificate, dated December 5, 2008, and signed by the HRC Commander.

4.   Subsequent developments

During the required review of Appellant's court-martial by the Court of Criminal Appeals, the defense filed an assignment of errors on January 29, 2009, contending that Appellant's administrative discharge from the Army operated to remit the unexecuted dismissal in her court-martial sentence. Six months later, on June 22, 2009, the Army's Military Personnel Division issued orders stating that Appellant's release from active duty had been revoked. Two months after that action, on August 12, 2009, the HRC Commander issued orders stating that Appellant's administrative discharge had been revoked. In the aftermath of those actions, the Government filed a brief with the Court of Criminal Appeals asserting that Appellant's administrative discharge was prohibited by regulation and had been voided.

The Court of Criminal Appeals ordered the parties to submit briefs concerning the effects of the various personnel actions, and further ordered the Government to obtain an affidavit from the HRC Commander. In the course of deciding the case, the court focused primarily on AR Reg. 135-175, which provides the authority to discharge an individual who has completed his or

her military service obligation and has not requested retention

in the IRR.  Watson, 69 M.J. at 628.  The court identified as a

critical question the exercise of discharge authority by the HRC

Commander in light of para. 1-3.a.[1] of the regulation, which

provides --

>           a.  Reserve component officers will be
>           separated only by --
>
>           (1)  The Secretary of the Army.
>
>           (2)  Commanders specified in this regulation
>           under conditions set forth in this and other
>           pertinent regulations.
>
>           (3)  Commanders specified in special
>           directives of the Secretary of the Army
>           under the conditions in these directives.
>
>           (4)  In relation to (2) and (3) above, the
>           discharge authority delegated to commanders
>           by this regulation will not include
>           authority to discharge an officer under a
>           court-martial sentence to dismissal, prior
>           to completion of appellate review, unless
>           the discharge authority intends the
>           discharge to act as a remission of the
>           conviction.

The court had difficulty with the wording of the

regulation, particularly the phrase "remission of the

conviction."  69 M.J. at 629.  Under the Manual for Courts-

Martial, the term "remission" refers to the sentence, not the

findings.  See Rule for Courts-Martial (R.C.M.) 1108(a).  The

---

[1] The correct version of the regulation sets forth this provision
in para. 1-4.  See AR Reg. 135-175 para. 1-4, Rapid Action
Revision Apr. 27, 2010.

HRC Commander, who had discharge authority over Appellant, held the power to remit the sentence through issuance of an administrative discharge, but did not have the authority to act on the underlying court-martial conviction.  See R.C.M. 1108(b); R.C.M. 1112.  Faced with ambiguity caused by the regulation's reference to the discharge authority's intent with respect to a "conviction," the court interpreted the regulation as referring to the "sentence" rather than the conviction.  69 M.J. at 628.

The court also addressed the interpretation of a separate part of the regulation, para. 1-10.b., concerning revocation of discharges, which provides that:

> b.  A discharge order may not be revoked after its effective date, provided --
>
> (1)  The order was published from a headquarters authorized to approve the discharge and to issue a discharge certificate . . .
>
> (2)  There is no evidence that the discharge was obtained under fraudulent circumstances.
>
> (3)  The officer concerned received actual or constructive notice of the discharge.

The court construed the term "headquarters authorized" to mean "a headquarters acting in a manner not otherwise inconsistent with regulation governing its action."  69 M.J. at 629.  Next, the court interpreted the regulation as containing an implied requirement that "the discharge authority have knowledge of the court-martial conviction of the officer pending an

administrative discharge." Id. Based upon this implied requirement, the court concluded: "In the absence of such knowledge, there is no delegated authority." Id. The court added: "With such knowledge, the discharge authority must then intend the discharge to act as a remission of appellant's court-martial conviction." Id. The court did not reconcile this interpretation, relying on the term "conviction," with its earlier recognition that the authority of an administrative discharge authority, such as the HRC Commander, could extend only to remission of the sentence, not the conviction. Id.

After interpreting the regulation, the court stated that "we do not find affirmative evidence of fraud in appellant's discharge . . . ." Id. The court also noted that "it appears appellant did receive notice of her administrative discharge." Id. The court then turned to the question of whether the HRC Commander was in a "headquarters authorized" to issue a discharge, and thereby have the power to revoke that discharge under para. 1-10 of AR Reg. 135-175. Id. In that regard, the court focused primarily on an affidavit submitted to it by the now-retired HRC Commander on December 1, 2009, more than one year after Appellant's discharge. Id.

The HRC Commander's affidavit noted that "the system" had "automatically calculated" Appellant's military service obligation, that "it was determined" that Appellant had no

10

remaining service obligation, that "HRC-STL then notified" Appellant "that she must elect to remain in the IRR," and that Appellant submitted "a request for voluntary resignation."  The affidavit further stated that the Commander had "approved" Appellant's "request and subsequent discharge orders effective 5 December 2008."

In the affidavit, the HRC Commander summarized her duties, but did not indicate that she bore any responsibility for ascertaining the existence of any pending military justice actions.  Instead, she suggested the responsibility lay elsewhere:

> At the time I approved her discharge orders, there had been nothing provided to this Command or filed in her Official Military Personnel File to indicate that while on active duty, CPT Watson had been court-martialed, had been adjudged a dismissal at that court-martial, that the convening authority in her case had approved the findings and sentence, to include her dismissal, and/or that CPT Watson had appealed her conviction.

The Commander added:  "If I had been aware that CPT Watson was pending dismissal, I would not have approved her discharge from the U.S. Army reserves."  She concluded the affidavit by stating:  "I was unaware of the appeal and did not intend the discharge to act in any way as a remission of the conviction under AR 135-175, paragraph 1-3a(4)."

Relying on the Commander's post-discharge statement that she did not intend the administrative discharge to act as a

remission of the conviction, the court concluded that the Commander "lacked delegated authority" to discharge Appellant, and that the administrative discharge had been properly revoked. Watson, 69 M.J. at 629. On that basis, the court held that the administrative discharge, having been revoked, did not remit the punitive discharge portion of the court-martial sentence. Id. at 629-30.

## III. DISCUSSION

We interpret regulations under a de novo standard of review. Estrada, 69 M.J. at 47. The task of interpreting AR Reg. 135-175 is complicated by the regulation's use of inaccurate terminology. The limiting language refers to "remission of the conviction." An administrative discharge authority, such as the HRC Commander, may be delegated power to remit a sentence, but such a commander does not have the power to "remit" or otherwise disapprove a conviction as an administrative matter in the absence of separate authority to act on the record of trial. See R.C.M. 1108(b); R.C.M. 1112. The Court of Criminal Appeals sought to address this problem by treating the word "conviction" to mean "sentence." The court also attempted to deal with other interpretive problems in the regulation by suggesting that a variety of requirements and understandings could be read into the regulation by implication.

We, however, decline to infuse into the regulation a degree of clarity that was not available to the commander exercising discharge authority at the time of Appellant's discharge.

Our primary focus involves the wording and structure of the regulation. AR Reg. 135-175 delegates broad discharge authority to individuals such as the HRC Commander. Under para. 1-3.a.(4) of the regulation, the discharge authority has the power to issue an administrative discharge to an officer whose court-martial sentence contains an unexecuted dismissal. Para. 1-3.a.(4) of the regulation further states that "the discharge authority delegated to commanders by this regulation will not include authority to discharge an officer under a court-martial sentence to dismissal, prior to completion of appellate review, unless the discharge authority intends the discharge to act as a remission of the conviction." Para. 1-10.b. lays out the narrow circumstances under which a discharge can be revoked after issuance. Absent any fraud and provided the person facing discharge receives notice, a discharge may only be revoked after issuance if it was not published by a "headquarters authorized to approve the discharge and to issue a discharge certificate."

The regulation does not remove the HRC Commander from occupying the status of a discharge authority with the power to approve an administrative discharge of an officer pending review of a court-martial sentence, including a sentence that extends

13

to an unexecuted dismissal.  Instead, the regulation explicitly provides such authority, and sets forth a requirement governing the exercise of discretion by the discharge authority -- that the discharge authority intends the administrative discharge to remit a portion of the court-martial action.  As such, the regulation recognizes the status of the commander as a discharge authority, and then provides criteria -- focusing on the discharge authority's intent -- governing the exercise of that authority.

Although para. 1-3.a. provides guidance as to how the discharge authority should exercise discretion in issuing a discharge certificate, the manner in which the discharge authority exercises this discretion does not remove that person from occupying the status of a discharge authority. Accordingly, a mistake in the exercise of discretion by a discharge authority does not fall within circumstances under which revocation is authorized by para. 1-10.b.  Cf. Huang v. Sec'y of the Army, 23 F. Supp. 2d 1377, 1380 (N.D. Ga. 1998) (noting that para. 1-10.b. of "AR 135-175 . . . has no provision even indirectly authorizing revocation of discharge for 'obvious error'").

In the present case, Appellant received notice of her administrative discharge and no fraud was involved in its issuance.  Pursuant to para. 1-10.b., Appellant's discharge may

only be revoked if it was not published by a "headquarters authorized to approve the discharge and to issue a discharge certificate." Here, the HRC Commander was provided the express authority, in para. 1-3.a., to serve as a "discharge authority" in the case of individuals subject to adjudged dismissals. As such, Appellant's discharge was published by a "headquarters authorized" to issue it, and may not be revoked merely on the basis of a claimed deficiency in the HRC Commander's exercise of her discretion. In the present case, there was no authority for the court below to either order the production of or rely upon an extra-record, after-the-fact affidavit from the discharge authority as a basis for treating the discharge as revocable. Appellant's December 5, 2008, administrative discharge, which remains in effect, remitted the unexecuted dismissal. See Steele, 50 M.J. at 91-92.

As we have noted elsewhere, the military departments have ample authority to designate who may or may not exercise discharge authority. See, e.g., Smith, 47 M.J. at 59. Likewise, we have noted the authority of the military departments to issue regulations that have the effect of precluding an administrative discharge from taking effect. Estrada, 69 M.J. at 48. The decision as to whether an administrative discharge regulation should include a provision that both grants and withholds the power of a particular

discharge authority over a specified class of cases rests with the military departments.  The present case, which illustrates the substantial challenge of drafting such a rule, underscores the importance of identifying with clarity the officials who may exercise administrative discharge authority, as well as identifying with clarity the circumstances under which a discharge takes effect.

## IV.  DECISION

To the extent that the decision of the United States Army Court of Criminal Appeals affirmed a sentence that included a dismissal, the decision is reversed.  The findings and the remaining portion of the sentence are affirmed.

United States v. Watson, No. 10-0468/AR

STUCKY, Judge, with whom BAKER, J., joins (dissenting):

The majority states that "[a]lthough para. 1-3.a. provides guidance as to how the discharge authority should exercise discretion in issuing a discharge certificate, the manner in which the discharge authority exercises this discretion does not remove that person from occupying the status of a discharge authority." United States v. Watson, __ M.J. __ (14) (C.A.A.F. 2011). Therefore, "a mistake in the exercise of discretion by a discharge authority does not fall within circumstances under which revocation is authorized by para. 1-10.b." Id. This may be true, but misses the point. This is not a revocation case. The provisions of Dep't of the Army Reg. (AR) 135-175, Army National Guard and Army Reserve, Separation of Officers para. 1-3.a. (Feb. 28, 1987),[1] are mandatory, not merely precatory. The administrative discharge in this case was void ab initio. The discharge authority, the Commander of Human Resource Command (HRC), lacked delegated authority to issue the discharge because she did not intend the discharge to remit Appellant's conviction or sentence to a dismissal.

---

[1] After a published Rapid Action Revision dated April 27, 2010, the numbering of the regulation was affected, changing para. 1-3 to 1-4. I will continue to refer to the regulation as 1-3 in order to parallel the majority's discussion.

I.

Paragraph 1-3.a. does not merely provide guidance to discharge authorities.  It directs that "[r]eserve component officers will be separated only by . . . (2) [c]ommanders specified in this regulation under conditions set forth in this and other pertinent regulations."  AR 135-175 para. 1-3.a. (emphasis added).  A condition precedent to the delegation is then stated in para. 1-3.a.(4):

> In relation to (2) and (3) above, the discharge
> authority delegated to commanders by this regulation
> will not include authority to discharge an officer
> under a court-martial conviction to dismissal, prior
> to completion of appellate review, unless the
> discharge authority intends the discharge to act as a
> remission of the conviction.

Emphasis added.

The regulation's language is plain.  The authority granted by para. 1-3.a.(2) is subject to conditions within the regulation, such as the condition stated in para. 1-3.a.(4). Pursuant to that condition, a discharge authority has authority to discharge an officer under a court-martial sentence of dismissal only when the discharge authority intends the discharge to remit the conviction, or at least the dismissal. Id.

The majority's concern about the regulation's potentially ambiguous use of "remission of the conviction" instead of remission of a sentence to dismissal is misplaced, when, as

2

discussed below, there is no evidence that the discharge authority intended to remit anything.  Indeed, regardless of the breadth of the original grant of authority, see Watson, __ M.J. at __ (13), if the discharge authority lacks the requisite intent, then under the regulation there is no authority to issue a discharge.  An action without authority is void ab initio.  See United States v. Wilson, 53 M.J. 327, 332-33 (C.A.A.F. 2000) (holding that a discharge from an entity without authority to issue the discharge was without effect).

## II.

The majority avoids this outcome by classifying the HRC Commander's error as merely a mistaken exercise of the broad authority granted to the discharge authority under para. 1-3.a. The majority supports this conclusion by citing to Huang v. Sec'y of the Army, 23 F. Supp. 2d 1377, 1380 (N.D. Ga. 1998), which determined that AR 135-175 "has no provision even indirectly authorizing revocation of discharge for 'obvious error.'"

Reliance on Huang is misplaced.  First, the district court's opinion specifically noted that the Army had "not challenged [the discharge authority's] authority to issue the discharge certificate itself."  Id. at 1379.  Second, the discharge authority's error concerned whether Huang had met the grounds for discharge, not, as here, whether the discharge

3

authority had authority to discharge the officer. Id. For these reasons, the court in Huang was able to reach the issues of revocation and whether the discharge authority was a "headquarters authorized to approve the discharge."

In this case, the Army did challenge the Commander's authority, because it correctly recognized that para. 1-3.a.(4) compelled a different result in this case, given that the regulation makes the HRC Commander's intent to remit a conviction, or at least the punitive discharge, essential to having authority to discharge the officer. For the reasons below, I do not assume that the discharge authority had the requisite intent. Therefore, unlike the majority, I do not reach the issue of revocation under para. 1-10.b.

### III.

As previously stated, para. 1-3.a.(4) requires a discharge authority to "intend[] the discharge to act as a remission of the conviction." Intend means "[t]o have in mind a fixed purpose to reach a desired objective; to have as one's purpose." Black's Law Dictionary 881 (9th ed. 2009). Certainly the mere act of issuing a discharge does not demonstrate that the HRC Commander had a fixed purpose of remitting Appellant's dismissal. This is particularly so when the documents accompanying the discharge do not affirmatively demonstrate any knowledge by the Commander of the court-martial, let alone any

4

affirmative intention to remit Appellant's conviction or dismissal.

Moreover, in this case, there is no need to speculate as to the Commander's intent, because in an affidavit accepted by the United States Army Court of Criminal Appeals (CCA), and now part of the record, she denied having any knowledge of Appellant's court-martial conviction or intending to remit it or the punitive discharge.  The majority concludes that reliance on the discharge authority's affidavit is inappropriate in this case because the CCA had "no authority" to order or rely on an affidavit.  Watson, __ M.J. at __ (15).  The majority's assertion contradicts the longstanding practice of relying on affidavits as a means to resolve, on appeal, collateral claims that were not developed in the record of trial.  See United States v. Lewis, 42 M.J. 1, 6 (C.A.A.F. 1995) ("A Court of Criminal Appeals has discretion . . . to determine how additional evidence, when required, will be obtained, e.g., by affidavits, interrogatories, or a factfinding hearing."); see also United States v. DuBay, 17 C.M.A. 147, 149, 37 C.M.R. 411, 413 (1967) (recognizing the need for hearings to settle disputed issues of facts when "resort to affidavits [is] unsatisfactory"), quoted in United States v. Dykes, 38 M.J. 270, 272 (C.M.A. 1993) (alteration in original).  Even without the affidavit, the mere issuance of the discharge certificate,

5

without more, does not provide sufficient grounds to conclude that the discharge authority had the requisite intent, and hence the delegated authority.

Because the Commander did not intend to remit the sentence, she had no delegated authority to issue the discharge pursuant to the regulation. See AR 135-175 para. 1-3.a.(4); see also United States v. Garvin, 26 M.J. 194, 195-96 (C.M.A. 1988) (holding that "the mistaken delivery of a discharge certificate . . . was not accomplished with the intent required to effect a valid discharge"). An action without authority is invalid, and, for this reason, the discharge was void ab initio. See United States v. Banner, 22 C.M.R. 510, 516 n.1 (A.B.R. 1956) (holding a discharge void when "effected on a ground on which the discharging authority had no authority to discharge" (citing United States v. Reid, 15 C.M.R. 899 (A.B.R. 1954))).

Although I disagree with the majority as to the result reached in this case, I share the majority's belief that the Army's discharge regulations could have been drafted more clearly. The problem in this case would likely not have arisen had the regulations provided appropriate safeguards to ensure that the left hand knew what the right was doing, such as providing a process to validate or implement the exercise of HRC Commander's contingent authority. As I said in Estrada, Army officials may wish to adopt a uniform standard among regulations

that clearly spells out key terms and conditions for issuing administrative discharges.  See United States v. Estrada, 69 M.J. 45, 48 (C.A.A.F. 2010).

IV.

I would affirm the judgment of the United States Army Court of Criminal Appeals.